[Crim. No. 461.   Second Appellate District.—February 9, 1916.]

# THE PEOPLE, Respondent, v. SALVATORE TURCO, Appellant.

CRIMINAL LAW—EVIDENCE—CROSS-EXAMINATION OF DEFENDANT.—Under section 1323 of the Penal Code, which provides that if a defendant in a criminal action offers himself as a witness, he may be cross-examined by the counsel for the people as to all matters about which he was examined in chief, the cross-examination is not necessarily confined to the particular details expressly contained in the questions on direct examination, but the people have the right to draw out anything which will tend to contradict the evidence of the defendant adduced on his direct examination or weaken or modify its effect.

ID.—BURNING OF INSURED PROPERTY—PROPER CROSS-EXAMINATION OF DEFENDANT.—Where, in a prosecution for the crime of burning and destroying insured property for the purpose of defrauding the insurance company, the defendant, as a witness on his own behalf, made denial upon direct examination that he had given any money to certain persons for the purchase of materials to be used in burning the property, or that he had anything to do with the preparations for the fire or any knowledge thereof, it is not error to permit the people on cross-examination to ask the defendant a series of questions covering conversations to which one of such persons had testified as having had with the defendant on the subject of the burning of the property.

ID.—IMPEACHMENT OF DEFENDANT—RECALL OF WITNESS IN REBUTTAL.—It is not error to permit the people to recall in rebuttal the witness who had testified to some conversations had with the defendant, and allow him to testify as to the particular conversations which the defendant denied, by asking him whether certain quoted statements were made, instead of requiring the witness to state the conversation in his own language.

ID.—CORROBORATION OF TESTIMONY OF ACCOMPLICE.—Under section 1111 of the Penal Code, requiring that the testimony of an accomplice be corroborated, it is a sufficient compliance with the rule if the corroborative evidence showing the circumstances of the commission of the offense also tends to connect the defendant therewith.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Frederick W. Houser, Judge.

The facts are stated in the opinion of the court.

Carter & Torchia, and E. E. Kirk, for Appellant.

U. S. Webb, Attorney-General, Robert M. Clarke, Deputy Attorney-General, and Roberto M. Camarillo, for Respondent.

CONREY, P. J.—The defendant appeals from the judgment and from an order denying his motion for a new trial. He and one Joe Barbera were jointly indicted and accused of the crime of burning and destroying property insured, for the purpose of defrauding the insurance company. The defendants were tried separately. The separate appeal of the defendant Barbera has been determined in accordance with an opinion of this court this day filed.

The defendant Turco claims that the court erred in permitting the district attorney to cross-examine him on matters which were not included in his direct examination. One Remeggio, a witness for the people, had testified that on the 7th or 8th of August, 1915, this defendant had given to Barbera the sum of $2.50 with which to buy some demijohns of gasoline, and had given to the witness 50 cents to buy cotton, and that these materials were to be used in burning the building of Turco. The building was actually set on fire by Barbera at about 2 o'clock on the morning of Tuesday, August 10th. Turco had gone to San Diego on Sunday and did not return to the premises in question, in the city of Los Angeles, until Tuesday morning, a few hours after the fire had occurred. Remeggio had testified that he and Barbera had purchased the gasoline and the cotton, as requested by Turco, and that Turco had assisted in arranging these materials in preparation for the fire. Remeggio further testified to some conversations which he had with Turco in June and in July, looking toward the transaction which culminated on August 10th, and that he had assisted Turco in securing the insurance which was obtained by Turco on or about the second day of August, 1915.

As a witness on his own behalf, the defendant denied that he had given any money to Barbera or Remeggio; denied that he had anything to do with the preparation for the fire or any knowledge thereof; and denied a statement in the testimony of Remeggio to the effect that Turco had offered him a sum of money to burn the property in question. His counsel also asked him: "When you went to San Diego, did you know there was going to be any fire there that Sunday?" to

29 Cal. App.—39

which he answered, "No, sir." The direct examination of defendant contained no direct reference to previous conversations with Remeggio (sometimes called Costa), except as to the particular matters above mentioned. On cross-examination the district attorney asked the defendant a series of questions covering the conversations to which Remeggio had testified, and also asked whether at certain dates in June and July he had made sundry other statements to Remeggio, which we need not repeat in detail, but which were on the subject of insuring the property and burning it or causing it to be burned.

The brief of counsel for appellant does not quote or cite any of the decisions declaring the law bearing upon the subject of cross-examination by the people of a defendant who has become a witness on his own behalf, but they simply rely upon section 1323 of the Penal Code, which reads as follows: "A defendant in a criminal action or proceeding cannot be compelled to be a witness against himself; but if he offers himself as a witness, he may be cross-examined by the counsel for the people as to all matters about which he was examined in chief. His neglect or refusal to be a witness cannot in any manner prejudice him nor be used against him on the trial or proceeding." The question presented relates to the permitted scope of cross-examination of the witness under a rule which limits such examination to "all matters about which he was examined in chief." Undoubtedly the cross-examination under such circumstances is not necessarily confined to the particular details expressly contained in the questions on direct examination. Where a fact denied by the defendant in his testimony covers the whole case or any branch of the case, the matter to be tested by the cross-examination is the truth or falsity of that denial, just the same as if it had been a denial of some more particular detail of fact. The people have the right on the cross-examination to draw out anything which will tend to contradict the evidence of the defendant adduced on his direct examination or weaken or modify its effect. (*People* v. *Rozelle,* 78 Cal. 84, 93, [20 Pac. 36] ; *People* v. *Buckley,* 143 Cal. 375, 388, [77 Pac. 169] ; *People* v. *Gallagher,* 100 Cal. 466, [35 Pac. 80] ; *People* v. *Dole,* 122 Cal. 486, 491, [68 Am. St. Rep. 50, 55 Pac. 581].) In *People* v. *Gallagher,* 100 Cal. 466, [35 Pac. 80], the supreme court said: "The right of cross-examination affords the most effective mode of test-

ing the accuracy or credibility of a witness, and should not be restricted beyond the requirements of the statute. It was not the intention of the legislature to give to a defendant the opportunity of making any statement upon his direct examination which he might choose, in reference to the issue before the court, and to preclude the prosecution from showing out of his own mouth that such statement is false." And in *People* v. *Dole,* 122 Cal. 486, [68 Am. St. Rep. 50, 55 Pac. 581] : "Any fact may be called out on cross-examination which a jury might deem inconsistent with the direct testimony of a witness, and a defendant testifying in his own behalf is in this respect put upon the same plane with other witnesses."

If on this cross-examination the defendant had admitted that he had previously made to Remeggio the statements called for by the questions to which these objections were and are directed, such answers would have had a tendency to discredit the testimony of the witness to which we have referred as given by him on his direct examination. These questions were so closely related to the testimony previously given by the witness, that they were fairly within the range and purpose of the "matters about which he was examined in chief."

In rebuttal the witness Remeggio was recalled and testified to several statements made by the defendant in conversation with him between June 9 and August 1, 1915, these being the conversations which had been denied by defendant and being in addition to the conversations to which Remeggio had testified originally as a witness for the people. It was objected that the questions were not rebuttal, and were leading and suggestive in that they asked whether certain quoted statements were made, instead of requiring the witness in his own language to state what was the conversation. Manifestly these questions were intended as impeachment of the defendant as a witness, and they were in the proper form of a question when asked for that purpose. Our decision above stated on the subject of cross-examination of the defendant is conclusive in favor of the propriety of these questions as asked in rebuttal.

Finally, it is insisted that the verdict was contrary to law, in that the conviction was had upon the testimony of an accomplice, without corroboration by other evidence tending to connect the defendant with the commission of the offense. Such corroboration is required by section 1111 of the Penal Code,

which further states that "the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." Of course it is a sufficient compliance with this rule if the corroborative evidence showing the circumstances of the commission of the offense also tends to connect the defendant therewith.. This defendant admitted that he was present in the building in question until noon of Sunday, the eighth day of August; the defendant had taken out insurance on the property on the second day of August; and an examination, immediately after the fire, of his stock of goods in the storeroom occupied by him in the building which was set on fire, developed that a very large proportion of the shoe boxes, shirt boxes, etc., constituting the apparent stock of goods on his shelves, were empty boxes. The insurance agent testified that on August 1st, when negotiating for his insurance policy, the defendant stated that the stock of goods in his building consisted principally of "gent's furnishing goods and shoes," and that the stock of goods was worth one thousand six hundred dollars. The policy issued was for one thousand two hundred dollars on this stock and eight hundred dollars on the building and fixtures. The witness who examined the stock immediately after the fire qualified as an expert upon such values, and testified that he made an inventory of this stock of goods and valued it at $476, figured on a retail basis. The defendant testified that when he closed his store at noon on Sunday, the eighth day of August, he left the store locked. Officers who examined the premises that Sunday night (warning having been secretly given them that the premises were to be burned) gave testimony showing that in the rear of the building they found a loose board of the wall which could be pushed aside so as to gain entrance; that in that way they entered and found in the storeroom certain jars of gasoline, cotton fuse and a candle, arranged in connection with each other as described by them. They had been watching the premises since 9 or 10 o'clock in the evening and made this entry at 2 o'clock in the morning. The fire did not take place until the next night.

Although it seems clear that the defendant Turco was absent from the city of Los Angeles from Sunday afternoon until Monday night, and although no witness other than Remeggio gave testimony directly connecting Turco with the preparations made for the fire, we are of opinion that the tes-

timony of the other witnesses to which we have just now referred shows circumstances not only tending to prove preparations made for the conflagration, but also tending to show the probability that the defendant had knowledge of those preparations. All that can be said in favor of the defendant's position in this regard is that the evidence leaves open a possibility that at some time between noon and 9 o'clock in the evening of Sunday, August 8th, some person other than the defendant, unknown to him, might have gained access to his storeroom and might have placed therein three demijohns containing fifteen gallons of gasoline with cotton arranged as a fuse and a candle ready to be lighted. But for us to say that the jury was unauthorized to treat such testimony as corroborative evidence tending to connect the defendant with the commission of the offense, would be to deny a legitimate and natural effect of the evidence.

The judgment and order are affirmed.

James, J., and Shaw, J., concurred.