THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* TOMÁS DÍAZ, Defendant and Appellant.

No. 9857.    Argued April 7, 1943.—Decided May 17, 1943.

*Hernán R. Franco* for appellant.    *R. A. Gómez, Prosecuting Attorney (Fiscal),* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

The appellant, Tomás Díaz, was charged with the offense of incest, committed sometime in the month of June 1939, because he had had sexual intercourse with Margarita Díaz, a legitimate child of his. The jury found him guilty, and the District Court of San Juan sentenced him to eight years' imprisonment in the Penitentiary. He appeals from said judgment assigning seventeen errors. Due to the fact that we have arrived at the conclusion that the judgment must be reversed and the case remanded for a new trial, as inadmissible evidence was admitted and the same prejudiced the defendant, we will limit ourselves to consideration of the following alleged errors:

"5. For dismissing defendant-appellant's petition for mistrial.

"8. For failing to exclude Juana Díaz as witness for the prosecution and allowing her to testify.

"9. For allowing the district attorney to introduce evidence of similar acts supposed to have been committed by the defendant-appellant with other persons."

██ ██ Before we proceed to discuss these errors, which involve only one question, we must first state that after Margarita Díaz, the alleged victim, had testified as to the way in which her father, the defendant, had had sexual intercourse with her, the district attorney called as a witness Juana Díaz, another daughter of the defendant, to testify. After she declared that she was married to Mariano Castro, the district attorney asked her: "Had something happened to you before you married Mariano Castro?" The defense objected to the question, alleging that in these cases evidence tending to prove illicit acts of the defendant with third persons was inadmissible. The court sustained the objection of the defendant and did not allow the question. Nevertheless, in the cross-examination of this same witness by the district attorney, the following interrogatory took place:

"Q. Tell me, Juanita, were you anxious to leave your home?
"A. Yes, sir.
"Q. Why?
"A. Because I did not like to live by my father.
"Q. Why?
"Defense: I object if it is for the former reason.
"Q. Because he had had no respect for me from my childhood.
"Defense: I am going to ask for a mistrial. Your Honor, I move the jury be withdrawn."

The question having been argued in the absence of the jury, the court dismissed the motion of the defense, on the ground that none of the questions of the prosecution "have been asked in violation of the ruling of the court forbidding testimony on incestuous acts of the witness with her father. And the court warns the district attorney that he should not follow that line of cross-examination."

The trial continued, and the defendant, besides introducing other evidence, testified in his own defense and denied having had sexual intercourse with his daughter Margarita. When cross-examined by the district attorney, he testified that he had never ill-treated his daughters, though he had sometimes given them a whipping when he had scolded or punished them. He again denied having had any sexual intercourse with his daughter Margarita, and said that he had always treated all his daughters alike, and further testified:

"Q. You used a phrase, when asked by my colleague Franco if it was true that you had slept with your daugther that night, you said: I am not so mean. What did you mean by that?

"A. That I am a man of conscience, and under no circumstance would I do such a thing with a daughter of my heart.

"Q. *And your conduct and your character according to that situation, how is it?*

"A. I am a man of conscience, and I know she is my daughter, and under no circumstances would my heart allow me to do a thing so mean to a daughter of mine, a daughter of my heart.

"Q. Does that mean that you were kind towards your daughters?

"A. You must understand that I was so kind towards my daughters, that my children up to the present have all been kind, because my children . . .

"*     *     *     *     *     *     *

"Q. What do you mean when you say that you have treated all your children alike?

"A. Because all of them are my children.

"Q. What do you mean to say?

"A. That they are my children and I treat all of them alike.

"Q. Then you have treated all your children the same way in which you treated Margarita?

"A. Yes, sir. Up to the present, but not in the same way in which she accuses me to have treated her." (Italics ours.)

After the evidence for the defense had been offered and the jury had withdrawn, the following incident took place:

"District Attorney: Your Honor, I want to tell the court that my rebuttal will consist of the following: the testimony of Juana Díaz, who will testify on acts committed by Tomás Díaz with her,

as the defendant in his testimony, on direct examination, as well as on cross-examination, has emphatically stated *that his conduct is irreproachable,* and that his conscience does not allow him to realize the acts imputed to him, and denies having committed incest with his daughter Margarita.

"*        *        *        *        *        *        *

"Judge: . . . As to the other testimony offered to show that the defendant has had sexual intercourse with another of his daughters, it is a recognized principle by all the jurisprudence that in cases of this nature no direct evidence can be introduced of acts committed by the defendant with a third person, but that same jurisprudence holds that said evidence is admissible and can be introduced to refute the statements of the defendant. As the defendant has testified here that he has been an exemplary father, the court allows the district attorney to introduce said evidence and the court also cites 13 Cal. Jur. 969 and 14 Ruling Case Law 38. Let it be understood that the ruling of the court as well as the evidence to be introduced are objected to, and exception taken thereto by the defense."

In fact, the district attorney introduced as evidence in rebuttal the testimony of Juana Díaz, another daughter of the defendant, who testified, over the objection of the defense, that she had been married to Mariano Castro for twelve or thirteen years and that before she married, her father had deflowered her, and that she had told nobody but her husband after she had had her third child. The defendant testified in sur-rebuttal and denied having deflowered his daughter Juana.

In its instructions to the jury, the lower court, as to this aspect of the case, limited itself to summarizing the testimony of Juana Díaz and said that it had been introduced "to refute the statement of the defendant as to his conduct towards his daughters." It also referred to the testimony of the defendant denying the imputations of his daughter Juana.

The question to be decided is whether the lower court erred in admitting on rebuttal and for the purpose of contradicting the alleged good conduct of the defendant towards his daughters, evidence of a specific act of incest committed

by the defendant with another daughter, who is not the one with whom it is alleged the alleged offense of incest was committed. The court did not err in citing the general rule that said evidence is inadmissible as direct evidence on the information. It has been thus stated by authors and authorities. 1 Wharton's Criminal Evidence (11th ed.) 537, §356; Underhill, Criminal Evidence (4th ed.) 56, §186, and cases cited in the footnotes. Nevertheless, the lower court admitted the evidence in rebuttal under the theory that with it the testimony of the defendant as to his "model conduct" towards his daughters was refuted, and cited 13 Cal. Jur. 970, §4, and 14 R.C.L. 38, §8. We will now see if these authorities sustain said rule.

In 13 Cal. Jur. 970, §4, that deals with the evidence in incest cases, the following is said:

"The rule settled in California is that evidence of prior and subsequent acts of intercourse between the parties to the crime are admissible as showing that they were adulterously, incestuously, or lasciviously inclined—not to prove distinct offenses, or continuous criminality, but as corroborative evidence tending to support the specific offense for which the defendant is being tried. On the other hand, testimony tending to show the defendant's disposition by showing that he had committed such a crime with a person other than the one named in the information is not admissible, unless perhaps by way of rebutting the testimony of the defendant. And the testimony of a third person that the defendant committed the same offense against her cannot be admitted to corroborate the testimony of the prosecutrix, an admitted accomplice."

In 14 R.C.L. 38, §8, in its pertinent part, it is said:

" . . . According to the weight of authority evidence of other acts of sexual intercourse or lascivious familiarity between the same parties is admissible, as tending to show a tendency or disposition to do the thing complained of, though some cases hold that such evidence is not competent. But. . . evidence of lascivious conduct or sexual intercourse between one of the parties and third persons is not admissible, except for the purpose of rebutting an inference that might be drawn from certain evidence already admitted."

Only three cases are cited in the footnotes, *People* v. *Turco,* 29 Cal. App. 608, 156 Pac. 1001; *People* v. *Letoile,* 31 Cal. App. 166, 159 Pac. 1057, and *Skidmore* v. *State,* 57 Tex. Crim. 497, 123 S. W. 1129. These cases are no authority to sustain the theory under which the testimony of Juana Díaz was admitted.

In the case of *People* v. *Turco, supra,* what was decided was that:

"In a prosecution for arson, where a witness was recalled and testified to statements made by the defendant to him, and which were in addition to conversations of the witness testified to originally, although the questions were leading and suggestive, in that they asked whether certain quoted statements were made, instead of requiring the witness to state the conversations in his own language, they were in the proper form of a question asked in rebuttal for the purpose of impeachment."

The said Supreme Court of California in the case of *People* v. *Letoile, supra,* expressly decided that the rule stated in the case of *People* v. *Turco, supra,* was not applicable in a case of incest in which there was introduced as in the case at bar, in rebuttal, the testimony of another daughter of the defendant to the effect that the latter had had sexual intercourse with her. The court said:

"It is suggested, however, that the testimony was properly admitted in rebuttal, in that the defendant had opened the door therefor by testifying that he had had trouble with his daughters Lucy and Mary because of their staying out late at night against his wishes, and that that was the only trouble he ever had with his daughters . . . It was only upon cross-examination and under adverse rulings upon his objections thereto, that the defendant stated that he had not had any other trouble with his daughters. As to the daugther Mary, this was immaterial to the case. She had not been a witness and therefore had given no testimony for or against the defendant.

"In *People* v. *Turco,* 29 Cal. App. 608, 156 Pac. 1001, we had occasion to examine the authorities bearing upon the limits of the right of cross-examination of a defendant in a criminal case, and the limits of the right to introduce rebuttal testimony based upon

facts elicited by such cross-examination. The principle was recognized that the people have the right on the cross-examination of a defendant to draw out anything which tend to contradict or modify his testimony given on his direct examination, and that such testimony of the defendant may be met by testimony in rebuttal. In the present case, however, we do not think that the circumstances shown by the record are such as to warrant the application of the rule stated. The testimony of the witness Mary Letoíle, to which we have referred, should have been excluded.''

In the last of the cited cases, that is, that of *Skidmore* v. *State*, 123 S. W. 1129, the admissibility of evidence in rebuttal as to other sexual acts committed by the defendant, was not involved. What was admitted was evidence offered by the defendant to the effect that the victim had had sexual intercourse with another man, and even in that case it was held that evidence in rebuttal, consisting of the testimony of a witness that tended to prove that he had not seen the victim conduct herself improperly, was not admissible.

Section 244 of our Code of Criminal Procedure provides that:

"A witness may be impeached by the party against whom he was called, by contradictory evidence, or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony.

And §520 of the Code of Civil Procedure (§158 of the Law of Evidence), provides as follows:

"A witness may be impeached by the party against whom he was called, by contradictory evidence, or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony."

This court has decided that to impeach the veracity, reputation or conduct of a witness, no evidence can be intro-

880

duced to show specific acts of his immorality, *Camacho* v. *Balasquide*, 19 P.R.R. 564, nor can his veracity be attacked with evidence of certain reproachable acts, *People* v. *Alméstico*, 18 P.R.R. 314, and even that in cross-examination he cannot be examined as to questions that do not affect his credit, under the pretext that his veracity is to be impeached or in preparation for it. And that a cross-examining party has no right to bring them up for other purposes, *People* v. *Ramírez de Arellano*, 25 P.R.R. 243; *People* v. *Pou*, 55 P.R.R. 297.

In Wigmore's treatise On Evidence, vol. 1, p. 642, §193, the doctrine has been stated in the following way:

"Section 193.—Particular Bad Acts to show the Defendant's Character; (1) Relevancy. It has already been seen (*ante*, §58) that if a defendant in a criminal case chooses to offer his good character (for the appropriate trait) as an argument that he probably did not commit the offense charged, the prosecution may by counterevidence dispute the existence in him of the good character thus alleged; and it has also been seen that the fact thus to be proved or disproved is the real disposition or Character, of which reputation or anything else is merely evidence.

"The question thus arises how the Character is to be proved or disproved. It has been noted that there are three conceivable ways of evidencing it: (1) Reputation of the community; . . . (2) Personal Knowledge or Opinion of those who know the defendant; . . . (3) Particular Acts of Misconduct, exhibiting the particular trait involved. This last sort of evidence is now to be considered.

"The law here declares a general and absolute rule of exclusion. It is forbidden, in showing that the defendant has not the good character which he affirms, to resort to *particular acts of misconduct* by him.

"Is this prohibition based on the Irrelevancy of such evidence, or on some reason of Auxiliary Policy which assumes its relevancy but sees reasons of policy for its exclusion? That such former misconduct is relevant, *i. e.* has probative value to persuade us of the general trait or disposition, cannot be doubted."

After extensive citations from authorities, the author continues on §194, page 646, stating the reasons for the rule in this way:

"It may almost be said that it is because of this indubitable Relevancy of such evidence that it is excluded.. It is objectionable, not because it has no appreciable probative value, but because it has too much. The natural and inevitable tendency of the tribunal —whether judge or jury—is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge. Moreover, the use of alleged particular acts ranging over the entire period of the defendant's life makes it impossible for him to be prepared to refute the charge, any or all of which may be mere fabrications. These reasons of Auxiliary Policy, directed to prevent the risks of reaching verdicts through insufficient evidence, have operated to exclude that which is in itself relevant."

Wigmore continues by stating that originally in England this kind of evidence was admitted, but that three centuries ago, when the liberal reaction started with the restoration of the Stuarts, this policy of exclusion by either reasoning has received a more emphatic judicial sanction as time has passed and experience has shown its wisdom, and that it represents a real revolution in the theory of criminal trials and presents one of the peculiar traits of importance in establishing the difference between the Anglo-American system of evidence from that of continental Europe. After citing English and American jurisprudence relative to the matter, the author continues, saying:

"The reasons thus marshalled in various forms are reducible to three: (1) The over-strong tendency to believe the defendant guilty of the charge merely because he is a likely person to do such acts; (2) The tendency to condemn, not because he is believed guilty of the present charge, but because he has escaped unpunished from other offenses; both of these represent the principle of Undue Prejudice (post, §1904); (3) The injustice of attacking one necessarily unprepared to demonstrate that the attacking evidence is fabricated; this represents the principle of Unfair Surprise (post, §1849) . . .

"Furthermore, it is to be noted, the judicial exposition of these reasons shows the fallacy of supposing, as some do, that the object of the rule is merely to *show mercy to the guilty one*, to give him a final chance for life and liberty by artificially handicapping the pro--

secution—thus importing into courts of justice the notions of sportsmanship. On the contrary, the object is to prevent a person not guilty of the present charge from being improperly found guilty of it. If it be said that nevertheless this is still a spirit of kindness to the guilty, seeking to prevent his being punished now for what he has formerly done, the answer is that we are nevertheless protecting a person who is theoretically innocent of the present charge from being now found guilty of a past crime which he was not aware would be charged against him and which he has no opportunity to show to be fabricated.''

See also Model Code of Evidence of the American Law Institute, approved on May 15, 1942, rules 306 and 311, and Stone, The Rule of Exclusion of Similar Fact Evidence, 46 Harv. L. Rev. 954.

Even though it may unnecessarily prolong this opinion, we shall cite some cases similar to the one at bar, in which the previously stated rule has been applied.

In *People* v. *Luce* (Mich., 1920), 178 N. W. 54, the defendant was charged with having committed obscene acts with a girl. Upon testifying, the defendant denied the alleged offense and said also that he had never committed it with any other person. In the cross-examination, the prosecuting attorney asked him if he had not committed the act with another gril on a certain date, and the defendant denied it. In rebuttal the district attorney called the other girl to testify, and she was allowed to testify that the defendant had committed obscene acts with her. The court decided that, even though the cross-examination was admissible, due to the way in which the defendant had testified, this did not justify permitting the other girl to testify. The court said:

"In this class of cases the only testimony usually produced is that of the complaining witness and the respondent. Facts tending to show the commission of a similar offense on another child, on some other occasion, though restricted by the court to its bearing on his credibility, cannot but prejudice the jury and unconsciously lead them to the conclusion that he is in the habit of taking such liberties with little girls. The probability is strong that he would thus lose the benefit of the reasonable doubt to which he is entitled.''

*State* v. *Ruttberg* (N. J., 1915), 93 Atl. 97, involved a case of fornication in which it was alleged as error that the court had allowed the State to cross-examine the defendant as to his illicit relations with another woman and that after the defendant had denied it, the court permitted the said woman to be called as a witness to contradict him. The court decided that it was no error to allow the cross-examination, but as the defendant denied the relation, the error was not prejudicial; but that to allow the other woman to testify to contradict the defendant, was an error manifestly prejudicial, and that it was equally clear that said testimony was incompetent.

In the case of *State* v. *Herson* (N. Y., 1930), 152 Atl. 276, rape was involved. The defendant also testified, and on cross-examination denied having committed another similar offense with a girl who was brought to testify in rebuttal to contradict him. The court decided that said evidence was inadmissible and that it was manifestly prejudicial as the fact that the defendant would have denied the charge as to his previous conduct was no basis for the State to introduce said evidence to discredit him, or for any other purpose. The court further decided that the testimony of the defendant had not placed in controversy his good character, and said: "Character of defendant in rape prosecution, if in issue, could not be met by proof of particular act."

In the case of *People* v. *Nelson* (Mich., 1924), 198 N. W. 935, the defendant was charged with the crime of incest committed with his daughter, and the court permitted evidence, without objection from the defendant, to the effect that he had committed the same offense with his step daughter. In its instructions to the jury, the court stated that it had admitted said evidence for the purpose of exposing the character of the defendant, and that if the same was believed by the jury, it could determine the probability as to whether the defendant could have committed the other offense with

his own daughter. The court decided that the admission of said evidence as well as the instruction to the jury in relation with the same, were so clearly erroneous that the judgment should be reversed.

In the case of *State* v. *Williams*, 103 Pac. 250, the Supreme Court of Utah held, as appears from the syllabus, that: "In a prosecution for rape, it was reversible error for the state on cross-examination of the accused to compel him over objection to answer questions conveying the idea that he had permitted other children to call at his home in order that he might ravish them."

In *Wentz* v. *State* (Md., 1930), 150 Atl. 278, in which incest committed with defendant's daughter was involved, it was decided that the admission of evidence that the deferdant had committed criminal acts with another daughter, constituted reversible error. Even though in this case the testimony of the other daughter was admitted as direct evidence for the prosecution, the district attorney maintained that it was admissible to show the disposition, passion, and emotions of the defendant, but the court decided that not even for that purpose was such evidence admissible, and said:

"The testimony of the other daughter, not as proof of an independent offense, but as evidence of the kind of man the father was, and that he was capable of committing such a crime, might have had sufficient weight to tip the scales against him. That it could have had this effect in view of the opinion of this court that it was not admissible makes it reversible error."

Applying the doctrine stated by the cited authorities to the facts of the instant case, we hold that the testimony of Juana Díaz was inadmissible as evidence of the conduct or character of the defendant. Said evidence was prejudicial to the defendant because of the effect it undoubtedly had in the minds of the jurors, upon considering that if the defendant had ravished another daughter, they must give more

credit to the evidence of the people that tended to show the commission of the crime charged in the information. It is obvious that said evidence could have had the effect of destroying any reasonable doubt in the minds of the jurors. It is to be regretted that the repeated efforts of the district attorney to force wrongfully into evidence said inadmissible evidence, were at last successful, as the same was not necessary for the jury to determine the guilt or innocence of the accused as to the offense specifically charged.

For the reasons stated, we are obliged to decide that the ninth error was committed, and that the same carries with it the reversal of the judgment and the case must be remanded for a new trial.