[Crim. No. 2312. In Bank.—February 24, 1921.]

## THE PEOPLE, Respondent, v. FRED G. ANTHONY, Appellant.

[1] CRIMINAL LAW—COMMISSION OF LEWD AND LASCIVIOUS ACTS UPON BODY OF FEMALE CHILD—PREJUDICIAL MISCONDUCT OF DISTRICT ATTORNEY—ASKING OF IMPROPER QUESTIONS.—In a prosecution for the commission of lewd and lascivious acts upon the body of a female child under the age of fourteen years, where the evidence and conflicting considerations are so evenly balanced that if the jury attached the slightest weight to the innuendoes of the district attorney, such weight might be sufficient to turn the scales, it is prejudicial misconduct for the district attorney to repeatedly ask improper questions of a number of witnesses, including the defendant, relating to the commission by the defendant of lewd and lascivious acts upon other girls, notwithstanding the asking of such questions is assigned as error and the jury instructed to disregard them.

[2] ID.—NATURE OF CHARGE—DIFFICULTY OF DISPROOF—INSTRUCTION. In such a prosecution it is not error to refuse an instruction embodying the statements that it is particularly difficult for a defendant to clear himself of such a charge, that no charge is more easily made or more difficult to disprove, and that the two parties are usually the only witnesses to the act, as the same are statements of fact, not of law.

APPEAL from a judgment of the Superior Court of Solano County. W. T. O'Donnell, Judge. Reversed.

The facts are stated in the opinion of the court.

George W. Smith and Kenneth I. Jones for Appellant.

U. S. Webb, Attorney-General, J. Charles Jones, Deputy Attorney-General, and Arthur Lindauer, District Attorney, for Respondent.

WILBUR, J.—The defendant was convicted of the offense of lewd and lascivious acts done upon the body of a female child under the age of fourteen years, with the intent to arouse and appeal to his own sexual desires, contrary to the provisions of section 288 of the Penal Code. He appeals from the judgment.

A reversal is asked upon three grounds, as follows: (1) Misconduct of the district attorney during the trial; (2) the refusal to give an instruction requested by the defendant; (3) the insufficiency of the evidence to sustain the verdict of conviction.

The third ground was not pressed upon the argument. The testimony of the complaining witness was alone sufficient to support the verdict and her testimony was corroborated by another girl eleven years of age.

The principal point urged in support of the appeal is the misconduct of the district attorney. Several instances of asserted misconduct are assigned. A further statement of the facts is necessary to explain them.

The Good Templars Home is an institution maintained at Vallejo for the care and support of small children of both sexes. At the time of the offense charged the affairs of the home were under the actual management of the defendant and his wife, who were living at the home. The defendant was called as a witness in his own behalf and denied the charge made against him. Without the slightest basis therefor in the direct or cross-examination the district attorney asked the defendant if he had not hesitated to mention a certain room in his description of the premises, because in that room in the months of January, February, and March he had sexual intercourse with two girls whose names were mentioned in the question, one of whom was nine and the other thirteen years of age. The defendant assigned this as misconduct and moved that the answer be stricken out. Thereupon a recess was taken for the argument of the question, the objection was sustained and the answer stricken out. The jury were thereupon instructed by the court at the instance of the defendant to give absolutely no consideration to the question and to dispel from their mind anything in relation thereto and to disregard it.

A Mrs. Hansen was called as a witness by the prosecution in rebuttal, and testified that the defendant's general reputation for morality in the community in which he lived was bad. Thereupon the district attorney asked the witness if she had heard anything prior to the 2d of March, 1919, concerning Mr. Anthony having sexual intercourse with one of the girls in the home, naming her. The question was

objected to, the conduct of the district attorney in asking the question was assigned as error, and the court sustained the objection and admonished the jury substantially as before, to disregard the same.

Miss Nellie Bresnan, who was called by the defendant as a witness, on cross-examination was asked the following question: "Q. Now, Miss Bresnan, have you ever heard, while you were at the Home, of Mr. Anthony making a practice of committing lewd and lascivious acts and having improper intercourse with the girl inmates there, and in particular with those whom you have mentioned?" This question included the same girls who had been mentioned in the question subsequently asked of the defendant. The objection to this question was sustained, but no request was made for the admonition of the jury to disregard the asking of the question. The only excuse for this question is that the district attorney assumed that the witness had testified to the reputation of the defendant for morality on direct examination. It appears that on the direct examination the defendant sought to show his general course of conduct toward the girls in the home and his care and efforts on their behalf at the time of the influenza epidemic on the theory that this would tend to show his character for morality. The district attorney objected to this line of evidence and the questions were then postponed and were not subsequently asked. The questions asked by the defendant's counsel did not relate to the reputation of the defendant but to his course of conduct, and were as follows:

"Now, Miss Bresnan, up to the time of the making of this charge, did you ever have occasion to observe Mr. Anthony about the home?

"A. I have.

"Q. Now, up to the time of the making of the charges did you ever have occasion to observe Mr. Anthony's attitude and conduct toward the children?

"Mr. Lindauer: What purpose, what trait?

"Mr. Smith: Morality.

"A. Not any way—just in a fatherly way.

"Mr. Lindauer: I move to strike it out, 'Just in a fatherly way'—if your Honor please—this is a question of morality.

"Q. You understand, do you, Miss Bresnan?

"A. Yes.

"Q. Mr. Smith has asked you the question.

"A. Beg your pardon. I have never seen anything wrong in morality.

"Mr. Smith: I submit it should stand."

Later, in response to this question: "Did you see him with the girls about him many times or not?

"A. Yes, many times, as I would any man that comes around, greeting him, you know, in a nice way."

At this juncture the examination was halted by the objection of the district attorney that this was not the way to prove the reputation for morality.

The question is whether the asking of these questions, assigned as error, and, particularly that addressed to the defendant himself, constituted misconduct of so grievous a character that it could not be cured by the instructions of the court to the jury to utterly and wholly disregard it. In determining that question it is proper also to observe that the district attorney called several of the young girls from the institution in rebuttal who testified that the reputation of the defendant for morality was bad. The questions were directed to his reputation in the Orphans' Home and not in the community in which he lived. For instance, one girl, aged fourteen, testified as follows: "Q. Now, what was Mr. Anthony's reputation or general reputation *at* the Orphans' Home for morality, good or bad? A. It was bad." She had been previously asked by the defendant on cross-examination in testing her knowledge as to what morality means: "Q. And when was the first time you ever heard anyone talk about Mr. Anthony's morality, before the second day of March, 1919? A. Before then? Q. Yes. A. Why, I don't remember before. Q. You don't remember before? A. I don't remember how long *he* told me before."

She also testified that she had heard statements before the 2d of March. On her redirect examination she was asked the following question: "Q. . . . Do you remember an occasion in the month of February, 1919, on which occasion you were up in the barn with Mr. Anthony, and you left the barn in anger, do you remember that occasion? A. Yes, sir. Q. *Why did you get angry?*" This question was objected to and the objection sustained. It was clearly improper and very suggestive.

Among the girls from the home so questioned by the district attorney as to the reputation of the defendant for morality were the two named in the above question addressed to the defendant, concerning repeated acts of sexual intercourse committed with them in January, February, and March. The thirteen year old girl testified that his reputation in the home for morality was bad. The nine year old girl was unable to qualify as a witness because she did not understand the nature of an oath. These two character witnesses and one other were also included in the above question asked of Miss Bresnan by the clause, "and in particular with those whom you have mentioned." The latter question was broad enough to include the prosecuting witness who was also among those "mentioned" by Miss Bresnan.

In determining the prejudicial character of the district attorney's conduct it will be necessary to consider the situation presented by the record.

The defendant was confronted with the charge made by an eleven year old girl that he had placed his hands upon her person. The incident occurred in a room where a number of children were gathered. It was a comparatively public place. His duties called upon him to come in contact with these young girls. He was alongside the girl as he testifies, showing her a book. Under such circumstances the only defenses that he could make to such charge are, first, his own flat and positive denial; second, evidence of his good character; third, evidence tending to discredit the complaining witness. The defendant made a defense along all these lines. He flatly denied the misconduct charged. He not only showed that his reputation for truth, honesty, and integrity and morality was good, but in addition it appears that he has been in charge of this *quasi*-public institution in which children are kept and maintained; that he has instructed them in the Sunday-school and has been active in religious work. He also produced evidence tending to impeach the veracity of the complaining witness. Under these circumstances the jury is called upon to determine whether beyond a reasonable doubt the testimony of the complaining witness is true, and thus to determine whether or not beyond all reasonable doubt the testimony of the defendant is untrue. The defendant has offered all the proof

that any man, however unjustly accused, could offer, and yet, so far as this court is concerned, it is powerless to interfere with the verdict of guilty where there is a conflict of testimony, even though the verdict was based entirely upon the uncorroborated testimony of the complaining witness. However, in considering the question of whether or not the misconduct of the district attorney is prejudicial, it is necessary for us to consider the whole case as presented by the evidence. In a case of this kind the district attorney is confronted with the difficult task of convicting a man of previous good reputation for an offense so odious as to indicate a perverted mind. This conviction must be secured by the testimony of the young and immature girl whose testimony not only flatly contradicts that of the defendant, but also stamps his whole life as hypocritical and false. Under these conditions the district attorney not only sought to corroborate the complaining witness in every possible and legitimate way, but it is evident from the record, sought to create an atmosphere of suspicion by the improper questions asked. Experience would indicate that jurors are eager to get evidence which may be wholly improper, but which seems to them to elucidate the truth. If, under our system of criminal practice it had been permissible for the prosecution to show that the defendant had been guilty of acts of sexual intercourse with the young girls in his custody, and if it could have been shown that he had also made a practice of committing lewd acts upon the persons of other young girls in his charge, such evidence would not only have shown the lewd character of the defendant and strengthened the probability that he committed the particular offense charged, but the jury instead of being confronted with the problem of deciding which of two witnesses had told the truth, namely, the prosecuting witness or the defendant, would have either had the defendant contradicting all the witnesses offered upon that subject or, admitting the truth of the other charges or remaining silent with reference thereto. It is vastly more likely that one young girl might be untruthful in making such charge than that half a dozen would make similar untrue charges. Our law wholly rejects this character of testimony, not because it does not tend to prove the truth of the charge, but because of a just regard for the rights of the defendant, who, if con-

fronted by such witnesses, instead of being compelled to
stand trial on one charge made against him, would be con-
fronted by half a dozen or more charges. Our rule con-
fining the testimony to the crime charged in the information
has only been relaxed so far as to permit testimony of sim-
ilar conduct with the complaining witness. In view of the
fact that jurors instantly perceive the probative value of
such improper testimony and are also unfortunately inclined
to attach weight to the insinuations or suggestions of counsel
as to the proof in his possession, which is excluded by the
rules of law enforced by the court, it is clear that however
good the intentions of the jury, or however sincere they
may be in endeavoring to follow the instructions of the
court to disregard such suggestions, it is well-nigh inevitable
that they should give weight to such suggestions. It is true
that the asking of a question is neither proof of the fact
nor a declaration of its truth. Where, however, a series of
questions were asked, as they were here, each suggesting to
the court and to the jury that the district attorney was
advised that this man was guilty of lewd and lascivious
conduct with numbers of his young female charges and that
he had had sexual intercourse with several of them, one as
young as nine years, it is a psychological impossibility for
the jury to wholly eradicate the impression made by such
questions from their minds in weighing the evidence as
to the guilt or innocence of the defendant on the particular
item charged. It would be as impossible for the jury to
believe as it is for us to conceive that the district attorney
would ask questions of this character without any in-
formation whatever upon which to predicate the question.
If he had no such information and sought by a question
of that type to instill in the minds of the jury the idea that
there was some information in his possession which justified
the question, the misconduct would have been immeasur-
ably greater than if the facts were that he had information
which justified the question. A district attorney is charged
with the public duty of seeing that the defendant has a
fair trial. The jury is aware of this fact and must have
assumed that he had information which justified the ques-
tion. The question of the district attorney asked of the
defendant amounted to a charge against the defendant that
he had been guilty of the offense of rape committed upon

two small girls in his custody.  The human mind is not so constructed that a thing of that kind can be either forgotten or overlooked by a jury.

We are not called upon to consider the good intentions of the district attorney in asking the question.  The good faith of the district attorney in asking questions upon debatable ground is always an element to be considered.  But the good faith of the district attorney in a case of this kind in asking questions that are clearly improper does not take away from the question the prejudicial effect resulting to the defendant.  The real question is, Has the defendant had a fair trial?  It is clear under the circumstances of this case where the evidence and the conflicting considerations are so evenly balanced that if the jury attached the slightest weight to the innuendoes of the district attorney, that this weight might be sufficient to turn the scales.

[1]  Ordinarily, the prompt sustaining of objections to improper questions, coupled with instructions to the jury to disregard the question, will cure an error of this kind.  But where the offense has been repeated in various forms and where the evidence is so evenly balanced and the district attorney after being warned by the court continues in his course, we must hold that the misconduct was so prejudicial as to entitle the defendant to a new trial.

[2]  The court refused the following instruction requested by the defendant: "And in the prosecution of a crime of lewd and lascivious conduct conviction may be had upon the testimony of the prosecuting witness alone if it be sufficient to be accepted by the jury as true.  But such a charge is one of which it is particularly difficult for a defendant to clear himself.  No charge can more easily be made and none is more difficult to disprove.  From the nature of the case, the complaining witness and the defendant are usually the only witnesses to the act complained of.  For this reason it is the duty of the jury in such a case to carefully scan the testimony of the prosecuting witness and to view the same with caution."

It has been said that in cases of this character the court may properly instruct the jury that they should carefully scan the testimony of the prosecuting witness before reaching a conclusion that the defendant is guilty.  (*People* v. *Rangod*, 112 Cal. 669, [44 Pac. 1071]; *People* v. *Benson*,

6 Cal. 221, [65 Am. Dec. 506]; *People* v. *Fraysier,* 36 Cal. App. 579, [172 Pac. 1126]; *People* v. *Currie,* 16 Cal. App. 731, [117 Pac. 941]; *People* v. *Liggett,* 18 Cal. App. 367, [123 Pac. 225].)

The statements that it is particularly difficult for a defendant to clear himself of such a charge, that no charge is more easily made or more difficult to disprove, and that the two parties are usually the only witnesses to the act, are statements of fact, not of law. They may be proper in an opinion of this court in the course of discussion, but they are not proper in an instruction to the jury, though they may be entirely harmless. Some of these remarks have been included in instructions given and which have not been condemned as error in the above-cited cases. But the court is not bound to give an instruction containing them, and error cannot be predicated upon the refusal to do so.

Judgment reversed.

Sloane, J., Lennon, J., and Olney, J., concurred.

Lawlor, J., dissented.