[Crim. No. 2997. Second Appellate District, Division One.—September 1, 1937.]

## THE PEOPLE, Respondent, v. FRED L. ASAVIS, Appellant.

Gladys Towles Root for Appellant.

U. S. Webb, Attorney-General, and Warner I. Praul, Deputy Attorney-General, for Respondent.

HOUSER, P. J.—From a "judgment and sentence" that ensued upon his conviction of the criminal offense denounced by the provisions of section 288 of the Penal Code, to wit, that of the commission of "a lewd and lascivious act upon and with the body of . . . a female child under the age of fourteen years . . . ", defendant has appealed to this court.

As constituting a compelling reason for an order by this court by which the judgment would be reversed, appellant urges the point "that the testimony of other alleged offenses not charged in the information was improperly received by the court and constituted irreparable error". Similarly, appellant also asserts "that the court improperly received and considered evidence (relating to 'other offenses')

too remote and unconnected with the charge in the information, said evidence constituting prejudicial error''.

Since it is apparent that in principle both of such points are closely related one to the other, they will be considered as one. From the record herein, it appears that in the People's case in chief, the testimony of a minor female child of the age of eleven years was presented to the effect that theretofore, on an errand of delivering ''religious literature'', the child had gone to the home of defendant, and at his invitation had entered his house; that at that time, when she first saw defendant, ''he had his pants on and undershirt''; that he then went into a bedroom, and on emerging therefrom wore a bathrobe only, which was open so that she saw ''his private parts''; that he then took the child by the wrist and ''two or three times'' led her through all the rooms of the house, looking for a picture which he said he had and which he wished the child to see; that failing to find the picture, he sat on a chair and took the child on his lap; that his legs were ''nude, naked; . . . his private parts were exposed''; that the child was on the lap of defendant ''probably about five or ten minutes''; that upon defendant's inquiry of the child as to what was the meaning of a picture that appeared on the cover page of one of her so-called ''religious literature'' folders, and on receiving her reply with reference to such question, defendant released the child; whereupon she left his home, but immediately thereafter continued to deliver to twenty or thirty houses the ''literature'' which she had been distributing.

With respect to the other matter in the same connection, the record discloses that on the *cross-examination* of defendant, particularly with reference to the testimony that just has been narrated, defendant was asked by the deputy district attorney who was in charge of the prosecution regarding a former asserted impropriety which the deputy district attorney insinuated theretofore had taken place between defendant and a third female child. Such examination was as follows:

''Q. And you had other little children in the house under the same circumstances, haven't you, Mr. Asavis? A. No. I haven't. Q. How about ———? A. I have not. Q. Never had ——— in your house at any time? A. Not by myself. Q. She wasn't in your house about three years ago? A. No, she was not. Q. Well, you have a chicken pen at

your place, haven't you? A. Yes, I have two of them. Q. And you had ——— out there, didn't you? A. I did not. Q. At no time? A. At no time. Q. And at that time you never exposed your person? A. No, I did not. Q. Nor at any time fondle her, is that right? A. That is right.''

But that was not all. In so-called rebuttal of the testimony that defendant had thus given on cross-examination, the third female child was permitted to give her testimony. She testified that the incident in question had occurred at a time when she was six years old, which was three or four years before she gave her instant testimony. The examination then proceeded as follows:

''Q. . . . Kindly state what happened? A. Well, I went over to see their little daughter Joan, and they were not home, and somehow I got behind the chicken barn there and he made me touch his private parts. Q. Well, what did he do? You say he made you touch his private parts. What did he do, take your hands— A. Yes. Q. And did he put his hands on your private parts? A. No. Q. What did he do? A. He just made me touch his private parts with my hand. Q. With your hand. Well, what did he say to you; did he say anything to you at that time? A. No, he did not. Q. Well, did he have his private parts exposed? A. No. Q. Well, where were they, in his pants or out? A. In his pants. Q. And he had you put your hand over them? A. Yes. Q. And how long did he keep you there? A. Oh, just a minute or two and then he let me go for a minute and I ran for my bike and scrammed home. I wasn't old enough to know about it then.''

Not only by the appellate courts of the state of California, but also by many other courts having similar jurisdiction, it has been ruled that upon the trial of a defendant on a charge of the felonious commission by him of a sexual offense, evidence of like commission of other similar acts by the defendant with persons other than the prosecuting witness ordinarily is inadmissible. The case of *People* v. *Anthony*, 185 Cal. 152 [196 Pac. 47, 49], was one in which the defendant therein was charged with the commission by him of an offense of the same character as that here involved. One of the issues that was presented on that appeal related to the admissibility of evidence of the commission of similar acts by the defendant with persons other than the prosecut-

ing witness. The court gave the question full consideration, and, in part, said: "Our law wholly rejects this character of testimony, not because it does not tend to prove the truth of the charge, but because of a just regard for the rights of the defendant, who, if confronted by such witnesses, instead of being compelled to stand trial on one charge made against him, would be confronted by half a dozen or more charges. Our rule confining the testimony to the crime charged in the information has only been relaxed so far as to permit testimony of similar conduct with the complaining witness."

See, also, *People* v. *Bowen,* 49 Cal. 654; *People* v. *Stewart,* 85 Cal. 174, 175 [24 Pac. 722]; *People* v. *Elliott,* 119 Cal. 593 [51 Pac. 955]; *People* v. *Letoile,* 31 Cal. App. 166 [159 Pac. 1057]; *Abaly* v. *State,* 163 Wis. 609 [158 N. W. 308]; *State* v. *Wellman,* 253 Mo. 302 [161 S. W. 795]; *State* v. *Start,* 65 Or. 178 [132 Pac. 512, 46 L. R. A. (N. S.) 266]; *State* v. *McAllister,* 67 Or. 480 [136 Pac. 354]; *Webb* v. *State,* 80 Tex. Cr. Rep. 1 [187 S. W. 485]; *State* v. *Vance,* 119 Iowa, 685 [94 N. W. 204].

In volume 16 of Corpus Juris at page 610 the rule is thus stated: "Evidence of assaults by defendant upon, or acts of intercourse with, persons other than the prosecutrix is not admissible, unless they are parts of the same transaction; or unless statements in respect thereto are so connected in a confession with statements pertaining to the offense charged that it is impossible to exclude part of the confession without excluding all of it; or unless, according to some cases, defendant by his own testimony or otherwise claims an innocent intent."

In *People* v. *Knight,* 62 Cal. App. 143 [216 Pac. 96, 97], it is held that although the general rule is as hereinbefore has been indicated, "evidence of other crimes is competent to prove the specific crime charged when it tends to establish intent". But in the instant case, other than the fact that in the circumstances the child had been seated on his lap, defendant denied that any improper act on his part had taken place. No issue of "innocent intent" was involved.

On the trial of an action wherein the defendant therein is charged with the commission of "a lewd and lascivious act upon and with the body of . . . a female child under the age of fourteen years", it should require neither argument

nor authority to establish, if not to demonstrate, the prejudicial effect on the defense of evidence of the nature of that here under consideration. Such an offense is so revolting to one's sense of morals or decency that, with the laity at least, in itself, the fact that such a charge has been made affords strong evidence of the guilt of the person accused. Although even with common knowledge of the usual unreliability of statements that are made by imaginative small children, ordinarily stories that are told by them in which improper sexual conduct of men, of whatever nature such asserted conduct may be, is charged, are unhesitatingly accepted as true. In that connection, general observation leads to the conclusion that testimony given by the accused, however upright may have been his daily conduct, and commendable his general reputation within the knowledge of lifelong and intimate friends, usually goes for naught. At most, his sworn statements create no more than a conflict in the evidence. From a practical standpoint, he is helpless under such an accusation, with the result that his conviction usually follows. It is for such and similar reasons that the courts are so hesitant about admitting, especially in the case in chief, evidence of the commission by defendant of other offenses of a nature similar to that of which the defendant has been charged. Even in criminal cases other than those which involve sexual relations, the ordinary rule is applied, and is the result of recognition of the fact that prejudice to the defendant may, and usually does, follow from evidence that at some time in the past he has committed some other felony. Like most rules, that rule has its exceptions. But where no exception to the general rule is applicable, the courts have unhesitatingly announced that for a violation of such rule a new trial must be granted. In *People* v. *Martin,* 13 Cal. App. 96 [108 Pac. 1034], in treating of the seriousness of such an error, in part, it was said: "Its character was such as to greatly prejudice the defendant with the jury. . . . When, as in this case, irrelevant testimony has been admitted, and is of such a character as necessarily to be prejudicial to defendant, a new trial must be granted." In *People* v. *Canfield,* 173 Cal. 309 [159 Pac. 1046], it was held that "the introduction of testimony regarding a distinct felony was a serious error which must have tended to prevent him

(the defendant) from having a fair trial". And in *People v. Anthony,* 185 Cal. 152, at 158 [196 Pac. 47], it was said:

"In view of the fact that jurors instantly perceive the probative value of such improper testimony and are also unfortunately inclined to attach weight to the insinuations or suggestions of counsel as to the proof in his possession, which is excluded by the rules of law enforced by the court, it is clear that, however good the intentions of the jury, or however sincere they may be in endeavoring to follow the instructions of the court to disregard such suggestions, it is well-nigh inevitable that they should give weight to such suggestions. It is true that the asking of a question is neither proof of the fact nor a declaration of its truth. Where, however, a series of questions were asked, as they were here, each suggesting to the court and to the jury that the district attorney was advised that this man was guilty of lewd and lascivious conduct with numbers of his young female charges and that he had had sexual intercourse with several of them, one as young as nine years, it is a psychological impossibility for the jury to wholly eradicate the impression made by such questions from their minds in weighing the evidence as to the guilt or innocence of the defendant on the particular item charged. . . . A district attorney is charged with the public duty of seeing that the defendant has a fair trial. The jury is aware of this fact and must have assumed that he had information which justified the question. The question of the district attorney asked of the defendant amounted to a charge against the defendant that he had been guilty of the offense of rape committed upon two small girls in his custody. The human mind is not so constructed that a thing of that kind can be either forgotten or overlooked by a jury."

Finally, on this phase of the question, the comment accredited to Sir Matthew Hale (1 Hale P. C. 635, 636), as it appears in 52 Corpus Juris, page 1087, seems particularly appropriate: "The courts have repeatedly approved Sir Matthew Hale's statements in regard to the crime of rape, that 'it must be remembered, that it is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, though never so innocent'; and that we should 'be the more cautious upon trials of offenses of this nature, wherein the court and jury may with so much ease

be imposed upon without great care and vigilance; the heinousness of the offense many times transporting the judge and jury with so much indignation that they are over hastily carried to the conviction of the person accused thereof by the confident testimony sometimes of malicious and false witnesses'.''

Although the instant case was tried by the court sitting without a jury, the record presents satisfactory, if not conclusive evidence of the fact that the criticized testimony that was erroneously admitted in evidence carried great weight with the trial judge. In his oral summary of the evidence, which was made after argument by respective counsel and immediately preceding his finding of ''guilt'' of defendant, it appears that the trial judge made the following statements:

''Passing from her (the prosecuting witness) a moment, the next little girl—which of course is no issue here, other than the reflection on the probabilities of the case by her story—her story was straightforward. There is nothing there whereby we can challenge it except the fact, as suggested, that she made no complaint about it until a long time afterwards. We do not know, of course, the minds of children, but, in view of all of the circumstances of her story, it is difficult to conceive that she just made it up out of whole cloth, for any reason whatever. So far as the other little girl is concerned, she adds not much to the case. It was a long time ago, and the only thing which we could derive from that is that there must have been some question somewhere which brought the little girl into the picture, that would indicate at least some association with a child, which is not normal. . . . Can we say, in view of all of it that that is necessarily sufficient ground to repudiate the stories of these children, unrelated, not there together, no apparent opportunity for working this thing up in any particular? I think it would be asking too much to go that far and disregard the stories of these witnesses for that reason alone. . . . We appreciate very keenly the seriousness of a situation of this kind, but it would be doing violence to our own better judgment if we were to go so far as to entirely disregard the testimony of—well, all of the parties in this case. . . . ''

Notwithstanding the fact that appellant makes no point of it (for he is in no position to do so), but as indicating additional improper influences which manifestly were given

considerable weight by the trial judge, it is noted that the record also shows that as a part of defendant's case, the trial court received in evidence certain hearsay testimony which consisted in a conversation or conversations that had taken place in the absence and without the knowledge of defendant (1) between a sister of defendant and the mother of one of the children to whose testimony reference hereinbefore has been had; and (2) between the same sister of defendant and the foster mother or stepmother of the prosecuting witness. In reference to such hearsay testimony, the trial judge said:

"May I refer in this connection to the testimony of Mrs. Merriweather—that is a rather interesting story. Nowhere did she get any language from Mrs. Curtis or Mrs. Jensen, for that matter, which constituted a contradiction or a statement that they didn't believe the stories. They responded, as generous people might under the circumstances, to a relative of the defendant who was in serious trouble, passing it up to them; but just why would Mrs. Merriweather, under all of these circumstances, talk about leniency? That is a strange reaction to the situation there. If she believed that this was a frameup and that there was absolutely nothing to it, I don't see any occasion for talking about leniency, and yet she says she did mention that to one of these women. . . ."

With reference to the nature of the objections here interposed by appellant, and which hereinbefore have been quoted, respecting alleged error by the trial court in admitting the criticized testimony in evidence, respondent registers no objection; but even though respondent had here objected to a consideration by this court of the particular objections to the admission of such evidence that are now urged by appellant, former rulings by the appellate tribunals of this state with reference to such a situation appear to indicate that if such evidence was "absolutely or manifestly incompetent", an appellant is entitled to have that fact considered on appeal from the judgment (2 Cal. Jur. 269; *Fabian & Co.* v. *Callahan*, 56 Cal. 159) ; and in principle, as is otherwise stated in the same volume of California Jurisprudence at page 273, "where the objection cannot be met, no matter how specific, a specific objection is not necessary" (citing *Morehouse* v. *Morehouse,* 140 Cal. 88 [73 Pac. 738] ; *Lemley* v. *Doak Gas Engine Co.,* 40 Cal. App. 146 [180 Pac. 671]).

In the case of *People* v. *Anthony*, 185 Cal. 152 [196 Pac. 47], to which reference hereinbefore has been had, and in which case the misconduct of the district attorney in presenting evidence or in making suggestions respecting "other crimes" was the special subject of consideration by the Supreme Court, in part, the opinion contains the following: "But the good faith of the district attorney in a case of this kind in asking questions that are clearly improper does not take away from the question the prejudicial effect resulting to the defendant. The real question is, *Has the defendant had a fair trial?* (Emphasis added.) It is clear under the circumstances of this case where the evidence and the conflicting considerations are so evenly balanced that if the jury attached the slightest weight to the innuendoes of the district attorney, that this weight might be sufficient to turn the scales."

And so in the instant case: It is apparent that in reaching his conclusion that defendant was guilty of the offense of which he was charged, the erroneously admitted evidence constituted a vital element in the mind of the trial judge, and that as a consequence, in legal contemplation, defendant did not have a fair trial.

The judgment is reversed and the cause is remanded for a new trial.

York, J., and Doran, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 30, 1937.