[Crim. No. 4817. In Bank. Feb. 20, 1948.]

THE PEOPLE, Respondent, v. GEORGE WESTEK, Appellant.

Gladys Towles Root for Appellant.

Fred N. Howser, Attorney General, and John F. Hassler, Deputy Attorney General, for Respondent.

SPENCE, J.—Defendant was found guilty of six counts of violation of section 286 and three counts of violation of section 288 of the Penal Code, in relation to several young boys. His motion for a new trial was denied, as was his

application for probation, and he was sentenced on each count to the state prison for the term prescribed by law—the sentences on the six counts of sodomy to run concurrently with each other, and the sentences on the three counts of lewd and lascivious conduct to run concurrently with each other and consecutively with the sentences on the first six counts. He has appealed from the judgment of conviction and from the order denying his motion for a new trial.

As grounds for reversal, appellant urges: (1) the insufficiency of the evidence to sustain the verdicts, especially by reason of the claim that the prosecuting witnesses were accomplices and that corroboration, as required by section 1111 of the Penal Code, was lacking; (2) errors of law occurring at the trial in relation to the admission of certain rebuttal testimony; and (3) errors in the instructions to the jury. Careful consideration of the record in the light of these objections and the applicable principles of law negatives the force of appellant's respective contentions and establishes his conviction to be the result of a fair trial with proper regard for his substantial rights.

Appellant was accustomed to taking young boys—sometimes singly and sometimes in groups—on camping trips. The several boys here involved testified that the acts in question occurred at various times when they accompanied appellant on such trips. Appellant took the witness stand in his own behalf and denied the accusations. Thus as is usual in these cases, there was a sharp conflict in the testimony, and it becomes unnecessary to recite the sordid details in evidence. No rule is better established in this state than that prescribing the function of an appellate court in reviewing this type of record. "When there is a conflict in the evidence it devolves upon the jury to determine its weight and which witnesses should be believed. When the verdict is based on conflicting evidence it will not be set aside if there is substantial evidence supporting it." (*People* v. *Ahsbahs,* 77 Cal.App.2d 244, 248 [175 P.2d 33].) While there were some contradictions and slight inconsistencies in the boys' testimony, it cannot be said as a matter of law that their respective stories were inherently improbable in their vital particulars. Nor did the failure of the boys to report the commission of the acts to their parents for some period of time render the boys' stories unworthy of belief. These all were matters for the jury's consideration (*People* v. *Fremont,* 47 Cal.App.2d 341, 349 [117 P.2d 891];

*People* v. *Grant,* 53 Cal.App.2d 286, 287 [127 P.2d 567]), and this court may not disturb the verdicts if the jury could reasonably have drawn the conclusion from the evidence that appellant committed the acts in question. To this point it was aptly said in *People* v. *Becker,* 140 Cal.App. 162, at page 166 [35 P.2d 196] : "It is the peculiar and exclusive province of the jury to decide upon the credibility of witnesses; and although impeaching evidence in the nature of contradictions or otherwise has been received, it is still not only the right but the duty of the jury to determine to what extent they will believe or disbelieve the testimony of the witness thus assailed." The application of these principles is strengthened where, as here, the trial court has refused a new trial and thereby approved the findings of the jury. (*People* v. *Tedesco,* 1 Cal.2d 211, 219 [34 P.2d 467].)

Nor does the record sustain appellant's further challenge of the sufficiency of the evidence upon the ground that the boys here involved were accomplices and that there was no corroboration of their testimony. All of the boys were under the age of 14 years at the time of the alleged commission of the acts in question. ▮▮ With respect to the three counts of violation of section 288 of the Penal Code, no corroboration was required of the two boys there concerned and the court properly so instructed the jury. (*People* v. *Troutman,* 187 Cal. 313, 317-318 [201 P. 928] ; *People* v. *Spillard,* 15 Cal.App. 2d 649, 655 [59 P.2d 887] ; *People* v. *Von Benson,* 38 Cal. App.2d 431, 435 [101 P.2d 527].)

▮▮ With respect to the six counts of violation of section 286 of the Penal Code, the question of whether or not the two boys there involved were accomplices—each in relation to three alleged acts—was submitted to the jury. At the trial each of the boys admitted that at the time of the commission of the acts he knew them to be wrongful (Pen. Code, § 26, subd. 1), but each maintained that he "was afraid of" appellant and did not "willingly" participate in the acts. In these circumstances the court covered fully in its instructions the applicable law pertaining to accomplices—the statutory definition and the required corroboration to justify a conviction as provided by section 1111 of the Penal Code, as well as "the distinction between the consent necessary to constitute one an accomplice and mere assent and submission without consent." (*People* v. *Kanngiesser,* 44 Cal.App. 345, 347 [186 P. 388].) The importance of this latter consideration rests on the

premise .that the boys' mere submission to the violation of their persons would not involve the criminal intent necessary to subject them to prosecution for commission of the acts, and so classify them as accomplices. (*People* v. *Conklin,* 122 Cal. App. 83, 91 [10 P.2d 98].)

In *People* v. *Dong Pok Yip,* 164 Cal. 143 [127 P. 1031], where the alleged victim was a boy 9 years of age, the rule is thus stated at page 147: "It may be admitted that the evidence shows that the boy was ignorantly indifferent and passive in the hands of the defendant, even to the point of submission; but there is a decided difference in law between mere submission and actual consent. Consent, in law, means a voluntary agreement by a person in the possession and exercise of sufficient mentality to make an intelligent choice, to do something proposed by another. 'Consent' differs very materially from 'assent.' The former implies some positive action and always involves submission. The latter means mere passivity or submission, which does not include consent. (Citing authorities.) In cases of the character under discussion, the age and mentality of the subject of an indecent assault is important, and should always be considered in determining the presence or absence of consent. The mere submission of a child of tender years or retarded mental development to an attempted outrage of its person should not, in and of itself, be construed to be such consent as would, in point of law, justify or excuse the assault. (2 Bishop's New Criminal Law, sec. 35, subd. 2.) It is neither unreasonable nor unnatural to assume that such a child, in the hands of a strong man, might be easily overawed into submitting without actually consenting. (Citing authority.)"

That the boys accompanied appellant on successive camping trips and so gave appellant opportunity to repeat his alleged criminal acts upon them would not be conclusive; it would only be evidence which it would be proper for the jury to consider in connection with other facts tending to solve the question whether they acted voluntarily and with "common intent" united in the commission of the acts. (*People* v. *Featherstone,* 67 Cal.App.2d 793, 796 [155 P.2d 685].) The jury may have concluded that appellant's dominant personality kept the boys interested in going on the camping trips for the hunting, fishing and like activities, despite the possibility that they would thereby run the risk of suffering like mistreatment from appellant. There is no suggestion in the

record that the boys were consulted beforehand concerning the commission of the acts, or that they, in any manner, affirmatively participated therein. ▉▉▉ With these considerations at hand, the jury apparently accorded full credit to the boys' testimony that they did not "willingly" join in the criminal acts, and so concluded that their part therein constituted an "assent" rather than a "consent." Consequently the boys, by virtue of the evidence accepted by the jury as true, were not accomplices and corroboration of their testimony was not necessary. (*People* v. *Featherstone, supra,* 67 Cal.App.2d 793, 796.)

Upon reaching this conclusion with regard to the sufficiency of the evidence, the second major point to be noted is appellant's contention as to alleged errors of law occurring during the trial by reason of the admission of certain testimony adduced on behalf of the prosecution. Counsel for appellant concedes that "on some occasions the defendant may have flipped some of the boys in fun or that possibly when he was sleeping alongside of them his private parts may have touched them." On direct examination, appellant was asked by his counsel: "Did you at any time fondle their privates during the time you were wrestling? . . . Did you ever fondle them, touch them?" He answered, "I may have touched them" but he denied that such act was done "with any intent of arousing [his] passions or their passions." Then appellant's counsel, "to settle the question," elicited from appellant the statement that he had never "at any time" committed any act of sodomy, or any lewdness, in the county of trial or in "any other county" upon any boy. Thereupon appellant was asked upon cross-examination, and over objection by his counsel, if he had not committed such acts upon three specifically named boys, persons other than the prosecuting witnesses. Appellant denied that he had. Upon rebuttal, the prosecution called the three boys. Each testified, over objection by appellant's counsel, that appellant had committed upon him acts denounced by section 288 of the Penal Code; each stated that he was then "under fourteen years of age"; and each fixed the date of occurrence as within the same general period pertinent to the time of the alleged criminal conduct for which appellant was standing trial. The boys adhered to their stories throughout cross-examination, and upon surrebuttal appellant flatly denied their accusations. Appellant claims that the "admission of this [adverse] testimony was serious error,"

for it concerned other offenses identified as having been committed in counties other than Los Angeles County, the place of trial, and for which he was not being tried.

It is the general rule that evidence of other crimes, where it is offered solely to prove criminal disposition or propensity on the part of the accused to commit the crime charged, should be excluded because its probative value is outweighed by its prejudicial effect. (22 C.J.S., Criminal Law [1940], § 682, p. 1084; 8 Cal.Jur., Criminal Law [1922], § 167, p. 58; Wigmore on Evidence (3d ed.), vol. I, § 193, p. 642; § 194, p. 646.) Application of this general rule in prosecutions charging the commission of lewd and lascivious acts may be found in the cases of *People* v. *Anthony*, 185 Cal. 152, 157 [196 P. 47] ; *People* v. *Asavis*, 22 Cal.App.2d 492, 494 [71 P.2d 307] ; and *People* v. *Huston*, 45 Cal.App.2d 596, 597 [114 P.2d 607], where, so far as the respective opinions disclose, the prosecution was undertaking to prove similar offenses as part of its case in chief. But here a totally different situation is involved where appellant, apparently actuated by a desire to place himself in an especially favorable light before the jury, injected into the case in the course of his direct examination the whole subject matter of his past conduct with any boy, and it was to offset the effect of this gratuitous testimony that the prosecution introduced the challenged evidence.

The propriety of the rebuttal testimony stems from the settled rule that it is proper in a criminal case to cross-examine a defendant upon any relevant and material matter elicited on his direct examination, for the purpose of showing conduct or statements inconsistent with his direct testimony. (Pen. Code, § 1323 ; *People* v. *Gallagher*, 100 Cal. 466, 475-478 [35 P. 80] ; *People* v. *Buckley*, 143 Cal. 375, 388-390 [77 P. 169] ; *People* v. *Mammilato*, 168 Cal. 207, 213-214 [142 P. 58] ; *People* v. *Hoffman*, 199 Cal. 155, 161-162 [248 P. 504] ; *People* v. *King*, 13 Cal.2d 521, 527 [90 P.2d 291] ; *People* v. *Wilson*, 25 Cal.2d 341, 350-351 [153 P.2d 720] ; *People* v. *Page*, 28 Cal. App.2d 642, 649 [83 P.2d 77] ; *People* v. *Reese*, 65 Cal.App.2d 329, 347 [150 P.2d 571] ; *People* v. *Zammora*, 66 Cal.App.2d 166, 213-214 [152 P.2d 180].) As was said in *People* v. *Gallagher, supra,* at page 476 : "The right of cross-examination affords the most effective mode of testing the accuracy or credibility of a witness, and should not be restricted beyond the requirements of the statute. [Pen. Code, § 1323.] It was

not the intention of the legislature to give to a defendant the opportunity of making any statement upon his direct examination which he might choose, in reference to the issue before the court, and to preclude the prosecution from showing out of his own mouth that such statement is false.'' The correlating principle sustaining the admission of rebuttal testimony where the defendant opens the door to its reception is forcefully illustrated in the case of *People* v. *Hoffman, supra,* a prosecution for murder. The parallel features of the record there appear at pages 161-162, where the court noted the line of inquiry as follows:

''While on the witness stand on his own behalf the appellant was interrogated in part by his counsel to the following effect: 'During the 22 years you have been in Imperial County, except for the matter which is the subject of this trial here, have you ever had any trouble or difficulty with anybody whomsoever, other than a matter of such discussion as anyone is apt to be subject to? Have you ever been charged with any offense whatsoever?' Appellant responded: 'Never, never in my life.' On cross-examination, and over the objection of appellant's counsel, the prosecution asked the appellant the following questions: 'Q. This is the first occasion you ever had any trouble with a gun with any person, Mr. Hoffman? . . . Q. Did you ever draw a gun on anybody before?' To which questions the appellant respectively answered: 'A. I never used a gun on anybody before.' And, 'A. No, sir. I never drew a gun on anybody.' We find no merit in appellant's contention that the trial court ruled erroneously in each of these instances. The two enumerated questions asked on cross-examination were, in our opinion, clearly within the scope of the direct examination of appellant and therefore proper cross-examination.

''Subsequent to the above proceedings and during the production of rebuttal evidence by the prosecution, the State produced a witness who was permitted to testify, over appellant's objection, to the effect that three or four years previous to the trial he had been quail hunting on the appellant's premises when the appellant appeared holding a 'long gun' pointed at him; that he proceeded toward the appellant but was commanded by the latter to stop, the appellant saying 'No, don't come any closer, if you do I will kill you.' We are of the view that this rebuttal evidence was properly admitted for it tended to impeach the testimony given by appellant

that he had led an untroubled life and had never drawn a gun on anyone. In so holding we are not unmindful of the rules that a witness may not be impeached as to collateral matters, and, that proof of character by evidence of general reputation can be met only by evidence of general reputation and not by specific acts. Neither of these rules is, in our opinion, applicable so as to preclude the introduction of this rebuttal testimony.''

See, also, the case of *People* v. *Turco*, 29 Cal.App. 608, 611 [156 P. 1001], where the same considerations relating to the permitted scope of cross-examination of a defendant were deemed ''conclusive in favor of the propriety of [testimony] in rebuttal,'' offered by the prosecution for purposes of impeachment.

██ Despite these well-defined principles in measure of the right of the prosecution to take appropriate steps to test the credibility of a defendant's statements on direct examination, appellant argues that a different view should prevail where the case concerns the commission of sex offenses. Accordingly, he cites the decision in *People* v. *Rogers*, 26 Cal. App.2d 371 [79 P.2d 404]. That was a prosecution for the violation of section 288 of the Penal Code. There defendant, following his specific denial on the witness stand that he had committed any of the acts charged against him, stated in the course of his cross-examination by the prosecution: ''I have never been rude to children.'' Then he was asked whether he meant by that statement that he had never mistreated any children at all, and he answered: ''That is right.'' The prosecution thereupon was permitted to ''introduce evidence that appellant had previously entered a plea of guilty to contributing to the delinquency of a minor (a misdemeanor) predicated upon the charge that he had committed an act prohibited by section 288 of the Penal Code with a female child other than either of the prosecuting witnesses.'' (P. 372.) In declaring such procedure to constitute prejudicial error, the court cited as authority the cases of *People* v. *Anthony, supra,* 185 Cal. 152, and *People* v. *Asavis, supra,* 22 Cal.App. 2d 492, holding, as heretofore stated in accord with the general rule, that such evidence of other crimes is inadmissible where offered for the purpose of showing criminal disposition or propensity of the accused. But the Rogers decision cannot stand on that basis, for it—contrary to the situation in the Anthony and Asavis cases, where the challenged evidence was presented as part of the prosecution's case in chief—

concerned evidence introduced for impeachment purposes. Thus in the Rogers case the defendant, by his statement that he had "never been rude to children," was, in effect, making the claim that he had never been guilty of similar prior conduct as that upon which he was being tried. He thereby invited inquiry into the truth or falsity of his gratuitous testimony. From such standpoint, the prosecution's responsive evidence in regard to the defendant's plea of guilt of the other offense was manifestly not introduced to prove "the specific crime charged," but was offered for the purpose of contradicting the defendant's statement as to his prior conduct. If the defendant saw fit to place before the jury his own testimony with regard to such prior conduct, it was proper for the prosecution to undertake to disprove the truth of such statement. Accordingly, the case of *People* v. *Rogers* is disapproved.

Nor does the case of *People* v. *McDaniel*, 59 Cal.App.2d 672 [140 P.2d 88], aid appellant in his claim that his testimony in "opening the gates" for the rebuttal evidence in question cannot serve to establish its competency. There the point arose in connection with improper cross-examination of a character witness for the defense, by reason of the prosecution's failure to note the "vast difference between inquiring about reports, rumors and the like, of a character witness and questions as to what the witness *knows* of defendant." (P. 677.) Such cross-examination, in disregard of the established rules of evidence, was deemed "highly prejudicial" to the defense and the "so-called 'open the gates' argument" was declared "unavailing" to permit inquiry on irrelevant and collateral matters as there developed. But here appellant's voluntary declaration of his good character and unimpeachable moral status in relation to his prior conduct with boys was material to the issue involved, and the prosecution had the right to present responsive evidence which would "tend to contradict" appellant's self-serving statement "or weaken or modify its effect." (*People* v. *Turco, supra,* 29 Cal.App. 608, 610.) As the matter was considered in *People* v. *Buckley, supra,* 143 Cal. 375, at pages 389-390, in connection with the scope of cross-examination, it "would be a harsh rule that would forbid the usual practice of allowing one on trial for a crime to testify, if he so desires, that he has led a decent . . . life . . ., for such evidence certainly tends to show good character," but when he does so

open "voluntarily . . . the door to his past," he cannot complain if the prosecution elects to subject him to further examination in regard thereto for the purpose of testing his credibility. The same reasoning applies in relation to rebuttal evidence offered by the prosecution. (*People* v. *Hoffman, supra,* 199 Cal. 155, 162; *People* v. *Turco, supra,* 29 Cal. App. 608, 611.)

Moreover, the rebuttal evidence here in question was material in its bearing on the issue of intent. As such it came within the exception to the above-noted general rule, in that evidence of other crimes is ordinarily admissible, regardless of its prejudicial effect, where it tends to show guilty knowledge, motive, intent or presence of a common design or plan. (22 C.J.S., Criminal Law [1940], §§ 683-689, pp. 1089-1112; 8 Cal.Jur, Criminal Law [1922], § 168, p. 60.) So pertinent are those cases holding that where the defendant, testifying in his own defense, acknowledges the physical touching of the child but asserts his innocent intent, thereby definitely placing in issue the necessary element of intent, the prosecution may then introduce evidence that the defendant has committed similar offenses upon a person or persons other than the prosecuting witness in order to rebut the testimony of the defendant on a point material to the establishment of his guilt of the crime charged. (*People* v. *Knight,* 62 Cal. App. 143, 146-147 [216 P. 96]; *People* v. *Harrison,* 46 Cal. App.2d 779, 786 [117 P.2d 19].)

Here appellant on direct examination was asked whether he had ever committed any lewd or lascivious act upon certain of the prosecuting witnesses, and he replied that he may have so touched them but that such touching was done without any lustful intent. Then to emphasize his innocence, appellant volunteered the sweeping statement that he had never, at any time or at any place, committed upon any boy any such sexual crime as was charged. Such factual situation closely parallels that found in *People* v. *Harrison, supra,* 46 Cal.App.2d 779. There the defendant was charged with committing lewd and lascivious acts upon four of his children. On the witness stand he denied that he had ever committed any such criminal acts and protested that all he had ever done was innocently to rub the backs of his children when they requested him to do so. To meet this special defense that his acts were all innocent and proper, it was deemed appropriate for the prosecution to present another

child, "not named in the information," to testify as to her father's criminal behavior toward her. Thus the court stated at page 786: "In view of the fact that the intent of the defendant was an important factor in the proof of his guilt, it was competent to show other indecencies of the appellant committed with respect to still another child in order to leave no doubt of the criminal quality of the act charged in the information. (Citing cases.) Such evidence was calculated to rebut the innocent intent claimed by appellant. (*People* v. *Knight*, 62 Cal.App. 143 [216 P. 96]; *People* v. *Turco*, 29 Cal.App. 608 [156 P. 1001].)"

Similarly, in the present case it was not until appellant, after making certain admissions, claimed a completely innocent relationship not only with the prosecuting witnesses but with "any boy" with whom he had been associated, that any attempt was made by the prosecution to prove that his testimony in that respect was untrue, by showing the commission of similar acts on his part with other boys. Such procedure accords with the theory that after appellant had denied that acts of touching the boys were done with "intent to arouse [his] passions or their passions," it was proper to rebut this declared lack of lustful intent by offering proof that he had committed like lewd and lascivious acts upon other young boys. Appellant himself "opened the door for the admission of such evidence, and he is therefore in no position to complain of its reception . . . [as] relevant to show intention." (*People* v. *Knight*, supra, 62 Cal.App. 143, 147; cf. *People* v. *Asavis*, 22 Cal.App.2d 492, 497 [71 P.2d 307].)

Appellant's final contention that error was committed in the instructions is likewise without merit. The court, recognizing the factor of prejudice which normally accompanies a sex-offense accusation, cautioned the jury in its consideration of the evidence as follows: "By reason of the fact that charges of the nature involved in this case can easily be made and are often difficult to disprove, I instruct you that it is your duty to examine with caution the testimony of the prosecuting witness. The fact that the charge here made, however, is one difficult to disprove should not deter you from rendering a verdict of guilty in the event that you are convinced by the evidence beyond a reasonable doubt that the defendant is guilty as charged." An analysis of this precise instruction was made in the recent case of *People* v. *Ahsbahs, supra,* 77

Cal.App.2d 244, also a prosecution for violation of section 288 of the Penal Code, upon consideration of the identical argument here raised by appellant. As was there said at pages 250-251: ''The first sentence of this instruction fulfills the requirement for the giving of a cautionary instruction in sex cases. (*People* v. *Putnam*, 20 Cal.2d 885, 889 [129 P.2d 367]; *People* v. *Lucas*, 16 Cal.2d 178, 181 [105 P.2d 102, 130 A.L.R. 1485].) Appellant complains of the last sentence in the instruction in which the jury was told that the fact that the charge is difficult to disprove should not deter them from finding appellant guilty if they were convinced from the evidence beyond a reasonable doubt of his guilt. This sentence did not weaken, modify or detract from that portion of the instruction in which they were told to examine with caution the testimony of the prosecuting witness. The two portions of the instruction are not opposed to each other and the last sentence does not neutralize the first. By the language complained of the court did not indicate any opinion of its own as to the guilt or innocence of appellant, but in fact it emphasized the duty of the jury to be convinced beyond a reasonable doubt before returning a verdict of guilty. This instruction is identical with one that was approved in *People* v. *Arechiga*, 72 Cal.App.2d 238, 240 [164 P.2d 503], as 'an accurate statement of the law of this state on the subject,' ...''

Equally unavailing is appellant's objection that the court did not instruct so fully as the evidence might recommend relative to the question of his commission of lewd and lascivious acts as denounced by section 288 of the Penal Code. The jury was instructed that ''to constitute the offense'' prohibited by said section ''it [was] not necessary that the bare skin of the minor be touched [but] the touching, fondling, rubbing or feeling of the body, members or private parts of a minor, under the age of fourteen years, with the intent of arousing, appealing to and gratifying the lusts, passions and sexual desires of either the minor or the accused'' constituted ''the offense charged in the information, even though such touching, fondling, rubbing or feeling was through the clothing of the minor.'' While admitting that such instruction was proper (cf., *People* v. *Ahsbahs*, *supra*, 77 Cal.App.2d 244, 250), appellant argues that it did ''not cover a set of facts where there may have been a touching in fun as testified to by'' him, ''or a touching which may have been accidental while a person was sleeping.'' With these matters in the

record, he claims that the court erred in refusing to charge the jury further that "if you believe from the evidence that there was a touching but that there was not an intent to arouse, appeal to or gratify the lust, passions or sexual desires of the defendant or the alleged victim then you must find the defendant not guilty." But such supplementary language would have added nothing material to the instruction given by the court as above quoted, and it was only repetitious on the point that the touching must be with the specified criminal intent. The instruction given by the court was substantially in the language of the statute in reference to the necessary accompanying element of intent, and it would be unreasonable to assume that the jury could derive therefrom the impression that any touching which was inadvertent or in the course of a game or "in fun" would constitute the offense in question. Admittedly, as appellant maintains, the supplemental charge "would have done no harm"; and even conceding that it might "have clarified the matter," nevertheless the court's refusal to engraft such additional language on an instruction which adequately covered the situation would not constitute ground for reversal of the judgment. (Cal. Const., art. VI, § 4½.)

The judgment and the order denying appellant's motion for a new trial are affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., and Traynor, J., concurred.

CARTER, J.—I dissent.

While the majority opinion gives lip service to the "general rule that evidence of other crimes, where it is offered solely to prove criminal disposition or propensity on the part of the accused to commit the crime charged, should be excluded," it, in effect abrogates that rule and opens the door for the prosecution to produce evidence relating to wholly irrelevant matters, highly prejudicial to a defendant, on the pretext that such evidence is for the purpose of impeachment. Under the rule announced in the majority opinion, if a defendant was charged with stealing a horse at a certain time and place, and he should happen to testify that he did not steal the horse in question and had never stolen any horses, and that neither his father nor his grandfather had ever stolen any horses, the door would be open

to the prosecution to offer evidence by way of impeachment that some time during the lives of one or more of these parties one or all of them had at different times and places stolen one or more horses. This may seem to be a farfetched illustration, but I would not be surprised to see a majority of this court announce it as a sound rule of law if the precise question is ever presented. While the majority base their holding in this case, that evidence of other crimes was admissible, upon the ground that such evidence was offered by way of impeachment, the effect is just the same as if it had been offered as a part of the prosecution's case in chief. If it would have been immaterial and irrelevant as part of the prosecution's case in chief, it was likewise immaterial and irrelevant as impeaching evidence. That a witness cannot be impeached on a collateral or immaterial matter is well settled. (27 Cal.Jur. 107, 152; *People* v. *Smith,* 189 Cal. 31 [207 P. 518]; *Steen* v. *Santa Clara Valley etc. Co.,* 134 Cal. 355 [66 P. 321]; *People* v. *Cole,* 127 Cal. 545 [59 P. 984]; *People* v. *Worthington,* 105 Cal. 166 [38 P. 689]; *People* v. *Dye,* 75 Cal. 108 [16 P. 537]; *People* v. *Chin Mook Sow,* 51 Cal. 597; *People* v. *Burness,* 53 Cal.App.2d 214 [127 P.2d 623]; *People* v. *Westcott,* 86 Cal.App. 298, 305 [260 P. 901]; *Moody* v. *Peirano,* 4 Cal.App. 411 [88 P. 380].)

Defendant was not charged with lewd and lascivious conduct with respect to the three boys who testified in rebuttal and any testimony elicited from them relevant to such conduct was therefore irrelevant and immaterial and wholly collateral to the charges on which defendant was being tried. But the majority argues that this evidence was admissible because defendant opened the door for its reception. This argument is conclusively answered in *People* v. *McDaniel,* 59 Cal.App.2d 672, at page 677 [140 P.2d 88]: ''The argument that defendant's counsel 'opened the gates' is unavailing. An error that is prejudicial is no less so because it results from a lack of knowledge on the part of either counsel or both. Legitimate cross-examination does not extend to matters improperly admitted on direct examination. Failure to object to improper questions on direct examination may not be taken advantage of on cross-examination to elicit immaterial or irrelevant testimony. The so called 'open the gates' argument is a popular fallacy. 'Questions designed to elicit testimony which is irrelevant to any issue in the case on trial should be excluded by the judge, even though opposing

counsel has been allowed, without objection to introduce evidence upon the subject.' (27 Cal.Jur. p. 74.) 'It is a settled rule that cross-examination as to matters irrelevant to the issues may and should be excluded—even though, in some cases, testimony relative thereto was elicited upon direct examination—and that a party may not, under the guise of cross-examination, introduce evidence that is not competent within the meaning of the established rules.' (27 Cal.Jur. p. 106).''

It is true that in this state the trend of decision has been to allow evidence of other crimes generally, to show guilty knowledge, motive, intent, or a common scheme or plan. (8 Cal.Jur. 61.) But in cases involving lewdness, the rule that evidence of other crimes is not admissible has not been relaxed. (*People* v. *Huston,* 45 Cal.App.2d 596 [114 P.2d 607], and cases therein cited.) The reason for this is stated in *People* v. *Huston, supra,* at page 597: ''This court on previous occasions has directed the attention of the profession to the reasons for this rule, which are so aptly stated in the universally acknowledged pronouncement of Lord Chief Justice Hale on the subject of the crime of rape, which also applies to offenses interdicted by section 288 of the Penal Code. It is as follows:

'' 'It must be remembered, that it is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused though never so innocent; (and we should) be the more cautious upon trial of offenses of this nature, wherein the court and jury may with so much ease be imposed upon without great care and vigilance, the heinousness of the offense many times transporting the judge and jury with so much indignation that they are over hastily carried to the conviction of the person accused thereof by the confident testimony sometimes of malicious and false witnesses.' ''

And the same rule of exclusion is applicable in sodomy cases. (*People* v. *Wyett,* 49 Cal.App. 289 [193 P. 153]; *People* v. *Singh,* 121 Cal.App. 107 [8 P.2d 898].)

It is the settled policy of the law of this state to give effect to the universally recognized general rule of exclusion under which a defendant may be tried for no offense other than that with which he is charged (8 Cal.Jur. § 167, p. 58; *People* v. *Albertson,* 23 Cal.2d 550, 576 [145 P.2d 7]; see, also, Wharton's Crim. Evidence, §§ 343, 344, pp. 483 et

seq.; 20 Am.Jur. § 309, p. 287; 22 C.J.S., § 682, pp. 1084 et seq.). This rule and the reasons for it are well stated in the leading case of *People* v. *Molineux*, 168 N.Y. 264, 291 [61 N.E. 286, 62 L.R.A. 193]: ''The general rule of evidence applicable to criminal trials is that the state cannot prove against a defendant any crime not alleged in the indictment, either as a foundation for a separate punishment, or as aiding the proofs that he is guilty of the crime charged. (1 Bishop's New Crim. Pro. § 1120.) This rule, so universally recognized and so firmly established in all English-speaking lands, is rooted in that jealous regard for the liberty of the individual which has distinguished our jurisprudence from all others, at least from the birth of Magna Charta. It is the product of that same humane and enlightened public spirit which, speaking through our common law, has decreed that every person charged with the commission of a crime shall be protected by the presumption of innocence until he has been proven guilty beyond a reasonable doubt. This rule, and the reasons upon which it rests, are so familiar to every student of our law that they need be referred to for no other purpose than to point out the exceptions thereto. The rule itself has been stated and discussed in this court in a number of cases, but we will cite only a few. In *People* v. *Sharp*, 107 N.Y. 427 [14 N.E. 319, 1 Am.St.Rep. 851], it was said: 'The general rule is that when a man is put upon trial for one offense he is to be convicted, if. at all, by evidence which shows that he is guilty of that offense alone, and that, under ordinary circumstances, proof of his guilt of one or a score of other offenses in his lifetime is wholly excluded.' In *Coleman* v. *People*, 55 N.Y. 81, it is laid down as follows: 'The general rule is against receiving evidence of another offense. A person cannot be convicted of one offense upon proof that he committed another, however persuasive in a moral point of view such evidence may be. It would be easier to believe a person guilty of one crime if it was known that he had committed another of a similar character, or, indeed, of any character; but the injustice of such a rule in courts of justice is apparent. It would lead to convictions, upon the particular charge made, by proof of other acts in no way connected with it, and to uniting evidence of several offenses to produce conviction for a single one.'

''In *People* v. *Shea* (147 N.Y. 78 [41 N.E. 505]) the rule

is thus stated: 'The impropriety of giving evidence showing that the accused had been guilty of other crimes merely for the purpose of thereby inferring his guilt of the crime for which he is on trial may be said to have been assumed and consistently maintained by the English courts ever since the common law has itself been in existence. Two antagonistic methods for the judicial investigation of crime and the conduct of criminal trials have existed for many years. One of these methods favors this kind of evidence in order that the tribunal which is engaged in the trial of the accused may have the benefit of the light to be derived from a record of his whole past life, his tendencies, his nature, his associates, his practices, and in fine all the facts which go to make up the life of a human being. This is the method which is pursued in France, and it is claimed that entire justice is more apt to be done where such a course is pursued than where it is omitted. The common law of England, however, has adopted another, and, so far as the party accused is concerned, a much more merciful doctrine. By that law the criminal is to be presumed innocent until his guilt is made to appear beyond a reasonable doubt to a jury of twelve men. In order to prove his guilt it is not permitted to show his former character or to prove his guilt of other crimes, merely for the purpose of raising a presumption that he who would commit them would be more apt to commit the crime in question.' . . . The court of last resort in Pennsylvania thus states the rule: 'It is the general rule that a distinct crime unconnected with that laid in the indictment cannot be given in evidence against a prisoner. It is not proper to raise a presumption of guilt on the ground that having committed one crime, the depravity it exhibits makes it likely he would commit another. Logically, the commission of an independent offense is not proof in itself of the commission of another crime. Yet it cannot be said to be without influence on the mind, for certainly if one be shown to be guilty of another crime equally heinous, it will prompt a more ready belief that he might have committed the one with which he is charged; it, therefore, predisposes the mind of the juror to believe the prisoner guilty.' (*Shaffner* v. *Commonwealth*, 72 Pa.St. 60 [13 Am.Rep. 649].)''

After thus reviewing the general rule, the court in the Molineux case discusses the applicability of various exceptions, saying: ''The exceptions to the rule cannot be stated

with categorical precision. Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial. (Wharton on Crim. Ev. [9th ed.] sec. 48; Underhill on Ev. sec. 58; Abbott's Trial Brief, Crim. Trials, sec. 598.) ''

The majority opinion cites and relies upon *People* v. *Hoffman,* 199 Cal. 155 [248 P. 504], as authority for the position that proof of the commission of other offenses may be offered as impeachment of defendant's testimony on direct examination that he has not previously been in trouble or committed other crimes. It is true this case supports the position taken in the majority opinion. The Hoffman case, however, cites no authority for its holding on this proposition and it stands alone in opposition to the great weight of authority supporting the general rule ''that evidence of a distinct crime unconnected with that charged in the indictment cannot be received for the purpose of showing ·a greater probability that the defendant committed the offense charged.''

The obvious vice of allowing the introduction of evidence of other crimes is that it casts upon the defendant the burden of defending against charges he did not know‛ he would be required to meet on the trial of the specific charge then before the court. One of the fundamental provisions of the federal and state Constitutions is that an accused shall be informed of the nature and cause of the accusation. To admit evidence of such collateral facts would be to oppress the accused by trying him on charges the nature and cause of which he has not been informed and which he has made no preparation to meet, and by prejudicing the jury against him through the assertion of an offense the depravity of which would of necessity create prejudice in the minds of the jurors, and it would prompt a more ready belief that the defendant might have committed the act with which he is charged. The other offenses which the prosecution seeks to prove may be wholly groundless, but it may be impossible for defendant to locate and produce witnesses to refute them during the instant trial. The injustice of his situation is apparent when he is brought into court to answer to a spe-

cific charge, for the defense of which he has had ample time to prepare, and then be forced to meet evidence presented by the prosecution of one or more other offenses wholly unrelated to the specific charge. This was the identical situation in the case at bar and there can be little doubt but that defendant was prejudiced thereby.

Therefore, under the circumstances of this case, I am of the opinion that it was error to admit evidence of other crimes over defendant's objection. And, obviously, such error was not cured by the provisions of section 4½ of article VI of our Constitution.

For the foregoing reasons I would reverse the judgment and remand the case for a new trial.

Schauer, J., concurred.

Appellant's petition for a rehearing was denied March 18, 1948. Carter, J., and Schauer, J., voted for a rehearing.