[Crim. No. 2871.   Third Dist.   Mar. 11, 1959.]

THE PEOPLE, Respondent, v. ROY STAMPHER,
Appellant.

Albert H. Gommo, Jr., for Appellant.

Edmund G. Brown, Attorney General, Doris H. Maier and William O. Minor, Deputy Attorneys General, for Respondent.

SCHOTTKY, J.—This is an appeal from a judgment of conviction of violation of section 288 of the Penal Code and from an order denying a new trial. Trial was had without a jury.

Appellant was accused by information of committing lewd and lascivious acts upon the body of the prosecutrix, his 12-year-old daughter. The prosecutrix testified that on or about September 30, 1957, around 4:10 p.m. she came home from school and went into the bathroom. Appellant followed her into the bathroom and asked her to engage in an act of sexual intercourse. The prosecutrix said no, but the appellant pulled her panties down around her ankles, exposed himself and penetrated her privates with his penis while the prosecutrix was seated sideways on the toilet seat and leaning back against the wall. The prosecutrix also testified that appellant had committed similar acts on her during the preceding two years.

Appellant made a statement to the police in which he admitted that on two occasions he had awakened to find the prosecutrix in bed with him and that he was kissing her and otherwise engaged in what might loosely be termed sex play. Appellant denied ever having intercourse with his daughter and testified at the trial that the above portions of the statement made to the police referred to dreams which he had had.

Appellant also wrote letters to the prosecutrix while she was being kept at the Juvenile Detention Home in which he referred to her as "love bug" and made other statements which led the court to comment that some of these were more like letters to a sweetheart than to a daughter.

Appellant's first contention is that he was charged with violation of section 288 of the Penal Code and that the only crime that the evidence tended to prove was rape. There is no merit in this contention, for as stated by this court in *People* v. *Paris*, 59 Cal.App.2d 699, at page 702 [139 P.2d

671], "While a crime may be committed under section 288 without its amounting to rape, it seems impossible that rape may be committed upon a child under the age of fourteen years without thereby violating the provisions of section 288." The testimony of the prosecutrix, as hereinbefore set forth, is ample to support a conviction of lewd and lascivious conduct.

Appellant next contends that the entire proof in this case was the uncorroborated testimony of the 12-year-old prosecutrix. In such a case it is urged "the reviewing Court should scrutinize with discriminating care the testimony given by the prosecuting witness." A sufficient answer to this contention is that corroboration of the prosecuting witness is not required to sustain a conviction for violation of section 288. (*People* v. *Westek*, 31 Cal.2d 469, 473 [190 P.2d 9].) Furthermore, the statement made by appellant to the police and the letters he wrote to the prosecutrix while she was at the Juvenile Detention Home tend to corroborate her testimony.

Appellant contends further that the testimony of the prosecutrix was inherently improbable and that the act could not have happened as described by her. The trial court viewed the scene of the crime and concluded that the act could have occurred as described. The court also found that the prosecutrix told a straightforward story and that it could not discredit her story. Appellant's argument is merely one as to the weight of the evidence, and it was for the trial court to decide the weight to which the testimony of the prosecutrix was entitled.

Appellant contends that the trial judge was guilty of misconduct in limiting his examination of certain evidence at the trial. There is no merit in this contention. It appears in the record that the court did limit appellant's examination, but that this was done when the appellant's examination went into matters which were either immaterial or which had been adequately presented to the court for consideration. There is no contention that the appellant was prevented from introducing any evidence, by testimony or otherwise, which would have had any bearing on the outcome of the case.

Appellant next contends that the court was "inconsistent." This appears to be merely an attempt on the part of appellant to argue with the opinion of the court. It is not claimed that there was a variance between the findings as stated in the opinion and the proof, nor would the record support such a claim.

We are satisfied that the appellant received a fair trial, that

no prejudicial errors were committed, and that the evidence amply supports the judgment of conviction.

The judgment and order are affirmed.

Van Dyke, P. J., concurred.

PEEK, J.—I dissent. Virtually the entire testimony of the prosecutrix, and in particular that which related to the act of intercourse and the relative positions of herself and the defendant, is so incredible as to be wholly unworthy of belief. In fact not only is such testimony incredible, but it is an absolute physical impossibility that the act could have occurred in such a manner.

At the outset we are confronted with that type of offense so frequently referred to as one so easy to charge but so difficult to disprove. With that admonition in mind, it appears to me that the evidence should be examined in greater detail than has the majority. This I believe to be particularly true in view of what I would term an inadequate transcript.

The record, except for the categorical denials of the charge by the defendant, is without conflict. The defendant and the mother of the prosecutrix had never married. Approximately two years after the child was born the mother left her and the defendant, and for several years thereafter the child lived with the defendant. Approximately four years later the mother returned, and she and the defendant resumed their former relationship, during which period the prosecutrix was with them. Thereafter for a time she lived with her mother and apparently for a while with a grandmother. However, for the past several years she has lived with her father. According to her mother, the reason she was with her father was that "we just couldn't get along at home." The mention of home referred to the one made by the mother with her present husband who has children of a previous marriage also living with them. During the time the girl was with her mother there was difficulty concerning her relationships with boys. There was additional testimony by the father that he had similar difficulties with her, which testimony was corroborated by the owner of the house where they lived, and likewise corroborated by admissions on the part of the prosecutrix herself. This testimony referred to notes left at the home thanking her for her "favors" which notes were couched in unmistakably direct four-letter words. There was further testimony relative to numerous boys who came to the house, one of whom

the girl testified was "run out" by her father, and that on another occasion the father had called the police to remove a boy. Others were requested to leave by the landlady who in turn was told it was none of her business. The prosecutrix also testified she had run away from home on five occasions and had frequented a labor camp but not for several months prior to this proceeding. She further testified she had brought boys home unknown to her father. Additional testimony reflected a strictness on the part of the father in regard to these matters, such as a spanking in the presence of one boy with whom she was found "necking" in the rear seat of an automobile parked in front of her home. It is also noteworthy that during the time the girl was staying with her mother, and when she was approximately 9 years of age, she was involved in a case similar to this which occurred in Eureka and which resulted in a conviction. And even before that, when only approximately 4 years of age, she was likewise involved in a similar case while living with her grandmother in Corning.

In line with the comment of the trial court that possibly penetration did not occur, but that such fact was unimportant since it was not an element of the offense charged, the majority holds first that it is impossible to commit rape without also violating the provisions of section 288; and second, in any event, whether or not the testimony of the prosecutrix was improbable merely relates to the weight to be given the evidence, and that this is a matter solely for the trial court. I have no quarrel with such observations when taken as general statements of law, but I do quarrel with them when applied unqualifiedly to the facts in this case. Here the charge was predicated on one act—not a series of acts which would enable the court to reject some of the testimony as inherently improbable as it related to some of the acts charged, and to accept the testimony as to other acts. (See *People* v. *Russell,* 80 Cal.App. 243 [251 P. 699].) But to apply the rules enunciated in the majority opinion to one single act where the improbability of the testimony of the prosecutrix permeates the entire record, not alone does violence to common sense but blandly ignores the facts of life. This is not a question of merely proving facts sufficient to bring the case within section 288. This is a case where the testimony, if accepted at all, proved too much. I cannot help but wonder if the majority would apply the same reasoning to a charge of speeding in a 55-miles-per-hour zone where the only testimony was that the vehicle involved was a 1901 model and that it

was being driven at a speed of 100 miles an hour. To be consistent it seems to me they must. But, says the majority, its conclusion is not necessarily unreasonable since, in order to attain such a speed, a 1901 model or not, did not the driver first have to reach 55 miles per hour? Or, even assuming it was not quite 100 miles an hour as the only testimony showed, such variance is still unimportant since anything over 55 miles an hour was prohibited, and equally unimportant was the fact the car was a 1901 model which, under no stretch of the imagination, could ever have reached a speed of 55 miles per hour even in its younger years.

I simply cannot accept the incredible testimony of the prosecutrix, nor can I accept the rationalization thereof by the majority. The judgment should be reversed.

A petition for a rehearing was denied April 2, 1959. Peek, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied May 6, 1959. Schauer, J., was of the opinion that the petition should be granted.