Filed 5/6/16  P. v. Davis CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>MARQUISE KYWON DAVIS,<br><br>　　　Defendant and Appellant. | B262816<br><br>(Los Angeles County<br>Super. Ct. No. VA137099) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Robert J. Higa, Judge.  Affirmed.

Jonathan P. Milberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Yun K. Lee and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Marquise Kywon Davis appeals from the judgment entered following a jury trial that resulted in his conviction of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)),[1] during which he personally inflicted great bodily injury (§ 12022.7, subd. (a)).  He was sentenced to prison for the four-year upper term on his conviction.

Defendant contends the trial court erred in admitting evidence elicited during cross-examination that he had previously been in "trouble" with the police for fighting while in Juvenile Hall placement and that this erroneous admission of prejudicial evidence deprived him of a fair trial and due process (U.S. Const., 14th Amend.).

We affirm the judgment.  In testifying in his own defense, defendant asserted he did not condone violence, he had not been looking for a fight with the victim Casey Johnson, and he hit Johnson with a bat in self-defense.  The trial court did not abuse its discretion in admitting the challenged evidence, which was proper impeachment regarding defendant's credibility.

## BACKGROUND

On September 29, 2014, at about 5:00 p.m., Johnson went to visit his girlfriend near the intersection of Central Avenue and East 78th Street.  While at that intersection, Johnson saw defendant, who was across the street.  Johnson told him not to "go over there disrespecting my people no more," because defendant previously had threatened Johnson's girlfriend.  The men then went off separately.  Johnson walked his bicycle into an alleyway to go to the bathroom.  Afterward, he walked toward Central Avenue.  As he crossed the street, he was knocked out.

Ramiro Cordova saw Johnson walking his bicycle across the street.  He then saw defendant walk up from behind and swing a bat above his head and down on Johnson's head.  Johnson let go the bicycle and fell face up, bleeding from his head wound.  Cordova did not hear any yelling or see any fighting between Johnson and defendant

---

[1]     All further section references are to the Penal Code unless otherwise indicated.

2

prior to defendant's attack on Johnson. After striking Johnson with the bat, defendant turned around and walked away.

When Sheriff's Deputy Patricia Galaviz responded to a call regarding an assault with a deadly weapon, she observed Johnson lying on the ground in front of Cordova's auto center business.

At the hospital, Johnson was told he had been hit in the head with a bat, for which injury he received stitches. He was required to take medication for seizures.

On October 1, 2014, at his store, Cordova gave Detective Raquel Gonzales a description of defendant. He told Gonzales that defendant and Johnson frequently hung out at the liquor store across the street. As they spoke, several people were leaving the liquor store. Cordova looked over and said, "That's him over there . . . wearing a striped shirt with a [sic] green and black colors." Asked if he were certain, Cordova replied, "Yes, that's him. That is him."

Gonzales drove over to the liquor store, and her partner called out defendant's first name. Defendant turned around. As Gonzales approached, defendant asked, "Is this because I hit that man with the bat[?]" Upon hearing that statement and based upon what Cordova had related, Gonzales arrested defendant.

At the station, Gonzalez asked, "What happened?" Defendant related he was with his young niece[2] when he and Johnson had a verbal altercation. Defendant went home, grabbed a wooden bat, and returned to Johnson's location. After Johnson pepper-sprayed him, defendant, who became enraged, hit Johnson in the back of the head with the bat. Johnson fell to the ground, and defendant left.

At trial, defendant testified in his own defense. On September 29, 2014, earlier in the evening, several individuals went to his house and related that Johnson was threatening to beat him up. Later that evening, as defendant was returning from a store

---

[2]     Defendant identified the child with him as his brother's daughter, i.e., niece, but the child also was referred to as his own daughter, god baby, or god child. For clarity's sake, we shall refer to the child as his niece.

3

with his niece, Johnson approached and tried to fight him. Each time defendant tried to move away, Johnson would step in front of his niece's stroller.

As defendant attempted to escape, Johnson "maced" him in the side of the face. Defendant testified he had a bat with him for safety reasons because he had heard about Johnson's threat, and he picked up the bat to scare him away. Instead, Johnson "maced" him again, causing pepper solution to drip into his eyes. With his eyes closed, defendant swung the bat with one hand in defense.

Defendant testified he was scared because knew of Johnson's reputation; he had seen him beat up people; and he believed Johnson, whose eyes were "really popping out of his head," was under the influence. He denied he had been looking for a fight and testified he did not condone violence.

## DISCUSSION

1. *Defendant's Bad Acts Admissible Regarding His Credibility*

Defendant contends the evidence elicited during cross-examination that he had previously been in "trouble" with the police for fighting while in Juvenile Hall placement was irrelevant, inadmissible, and a violation of his rights to a fair trial and due process (U.S. Const., 14th Amend.). No error transpired.

On direct examination, defendant testified that he carried the bat for safety reasons because he had heard that Johnson made threats against him. He swung the bat at Johnson "[b]ecause I was scared and he had, he was macing me. So I was really defending me and this child." When asked if he left his house with a bat to teach Johnson a lesson or to pick a fight, defendant responded, "No. I'm not looking for a fight. I don't condone violence. I don't really like to put myself in that situation because I know what the outcome would be." On cross-examination, defendant testified he was going to the store with his niece when, without provocation, Johnson "maced," i.e., pepper-sprayed, him. He struck Johnson with the bat to protect himself and his niece. He explained he fled because he believed he had hurt Johnson; he was scared; he was "thinking fast," and "this [was] the first time [defendant had] ever been in this much trouble."

4

When the prosecutor asked, "This is the first time you have been in this much trouble?" defendant replied, "This much trouble, yes. This is—" The prosecutor then asked, "You never had any other law enforcement contact before?" Defendant responded, "I have [*sic*] law enforcement contact." After the trial court sustained a defense objection to defendant testifying to "this much trouble," the prosecutor asked if he had ever spoken with police. Defendant acknowledged he had spoken with police and reiterated "this is the first time [he] had been in that much trouble." The court overruled a defense objection "to this line of questioning." The prosecutor then asked if he had ever been involved in fights. Defendant acknowledged he had been in fights when he was younger while in "placement with the Juvenile Hall." He added he "grew up in . . . placement." When the prosecutor attempted to ask what defendant meant by placement, the trial court sustained a defense objection (Evid. Code, § 352). The prosecutor again asked if he had spoken to police in the past. Defendant replied, "I live in an area where police come through all the time. I'm Black. I get pulled over all the time."

Evidence Code section 1101 provides, as a general rule, "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (Evid. Code, §1101, subd. (a).) However, "[n]othing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act." (Evid. Code, § 1101, subd. (b).) Further, and controlling here, "[n]othing in this section affects *the admissibility of evidence offered to support or attack the credibility of a witness*." (Evid. Code, § 1101, subd. (c), italics added.)

A trial court's evidentiary ruling under this section is reviewed for abuse of discretion. (*People v. Doolin* (2009) 45 Cal.4th 390, 437.) "In reviewing for abuse of

5

discretion, we are guided by two fundamental precepts.  First, "'[t]he burden is on the party attacking the [ruling] to clearly show that the . . . decision was irrational or arbitrary.  [Citation.]'" . . . Second, a "'decision will not be reversed merely because reasonable people might disagree.  'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"'  [Citations.]  Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377. )

Mindful of the above governing legal principles, we conclude the trial court did not abuse its discretion in admitting the evidence elicited on cross-examination that defendant previously had been in "trouble" with the police for fighting while in Juvenile Hall placement.[3]  "'No . . . defendant who elects to testify in his own behalf is entitled to a false aura of veracity.'  [Citation.]" (*People v. Tamborrino* (1989) 215 Cal.App.3d 575, 590.)  On direct examination, defendant presented himself before the jury as a peaceful person, i.e., he did not condone violence, and as having acted solely in self-defense, i.e., he had not been looking for a fight.  The prosecutor therefore was entitled to cross-examine defendant regarding his credibility in this regard.  In so doing, he enabled the jury to consider that defendant, by his own admission, had previously been in "trouble" with the police for fighting while in Juvenile Hall placement,[4] which admission directly informed on his credibility.  (See *People v. Westek* (1948) 31 Cal.2d 469, 476-478 [rebuttal witness testimony that defendant previously appeared to point a ""'"long gun"'"" at him and threatened to kill him proper impeachment of defendant's testimony "he had led an untroubled life and had never drawn a gun on anyone"] .)

---

[3]     Defendant's companion claim that the erroneous admission of such evidence also violated his rights to a fair trial and due process (U.S. Const., 14th Amend.) therefore also is unsuccessful.

[4]     We note no evidence was before the jury as to what placement in Juvenile Hall meant, particularly with regard to any criminal charges or accusations.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


                                    BOREN, P.J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.